The SOUTHERN NEW ENGLAND DISTRIBUTING CORPORATION

v.

BERKELEY FINANCE CORPORATION and Shapiro Brothers Factors Corporation.

Civ. No. 9096.

United States District Court D. Connecticut.

March 7, 1962.

Korzenik & McLaughlin, by Armand A. Korzenik, Hartford, Conn., for plaintiff.

Cohn, Riemer & Pollack, by Jerome Medalie, Boston, Mass., for defendants.

BLUMENFELD, District Judge.

After removal of this case from the state court, the defendants now move to dismiss it on the ground that their activities in the state were not of such a character as to subject them to suit in Connecticut.

The warrant for the state's reach of service beyond its territorial borders upon a foreign corporation is found in Conn.Gen.Stats. § 33–411 (Rev. of 1958), which provides for service of process on foreign corporations:

(a) authorized to transact business in the state;

(b) transacting business in violation of § 33–396 for suit upon any cause of action arising out of such business; and

(c) " * * * whether or not such foreign corporation is transacting or has transacted business in this state * * * on any cause of action arising as follows:

"(1) Out of any contract made in this state or to be performed in this state; * * *

"(4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."

### TRANSACTING BUSINESS IN CONNECTICUT

■ Except for some situations, which will be considered later, a foreign corporation is required by Conn.Gen. Stats. § 33–396 (Rev. of 1958) to obtain a certificate of authority from the Secretary of State in order to transact business in Connecticut; and, in so doing, it appoints the Secretary of State as its agent, upon whom process may be served in suits brought against it in Connecticut courts. For failure to do so, it becomes subject to penalties and disabilities pursuant to Conn.Gen.Stats. § 33–412.

Since no such certificate of authority to transact business has been obtained by the defendants, Conn.Gen.Stats. § 33–411(a) is inapplicable to sustain jurisdiction over them. However, under §

33–411(b), omission or neglect to obtain a certificate of authority will not excuse a foreign corporation from responding to suits arising out of the business transacted [1] in the state, if failure to do so was in violation of § 33–396. This leads to an inquiry whether the activities carried on by the defendants in Connecticut were in violation of § 33–396. To answer that question, it becomes necessary to determine whether defendants' acts in this state fall outside the classification of activities permitted under § 33–397 (infra).

Connecticut, as a matter of state policy, has recognized the advantage of not imposing qualifications on the right of foreign corporations to conduct some kinds of commercial and financial transactions, since it has enumerated certain business activities of foreign corporations which do not constitute "transacting business." Section 33–397(b) provides:

"Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this chapter, [Ch. 599, Stock Corporations, Eff. Jan. 1, 1961] by reason of carrying on in this state any one or more of the following activities: [inter alia] (6) creating evidences of debt, mortgages or liens on real or personal property; (7) taking security for or collecting debts due it or enforcing any rights in property securing the same; * * *."

From examination of the affidavits filed by the parties, for consideration of this motion by the court, it will be seen that the defendants' affidavits disclose that under the terms of a contract made in Boston, providing for security ar-

---

1. A strict reading of the plaintiff's complaint reveals that it has avoided stating a claim "on any cause of action arising * * * [o]ut of any contract made in this state or to be performed in this state", perhaps in an attempt to escape the effect of a claim of privilege by the defendants under the doctrine of equal or superior rights under Ran W Hat Shop v. Sculley, 98 Conn. 1, 118 A. 55, 29 A.L.R. 551 (1922); See: Rest. Torts, §§ 766 et seq.

rangements, the defendant Berkeley Finance Corporation [Berkeley] loaned money to the plaintiff. The plaintiff's affidavit covers much more ground. It reveals that Berkeley provided funds for commercial financing of sales by the plaintiff as a franchised distributor for the Admiral line of appliances to various retail outlets throughout the State of Connecticut and counties in adjoining states with the usual security arrangements for the lender to receive assignment of accounts receivable; that Berkeley obtained trust receipts covering warehoused appliances; that Berkeley conducted in this state the incidental auditing of plaintiff's books, including checking of invoices and carrying out other procedures to verify the validity and authenticity of the securities received from the plaintiff; and that it also undertook direct collection of the accounts receivable. All of these activities would be embraced within the scope of "taking security for or collecting debts due it or enforcing any rights on property securing the same" within the meaning of § 33–397(b) (7).

Eight of the nine separate classes of activities which "shall not be considered to be transacting business in this state", as described in § 33–397(b) (1)–(9), set up qualitative, as distinguished from quantitative, standards. Since Connecticut has concerned itself with the character and kind of business being done rather than with the amount of business or the number of transactions, it is not likely that Connecticut courts would regard incidental conduct, consistent in character to permitted activities, to constitute transacting business, as that would subvert the clear language and obvious purpose of the statute.

"Taking security for or collecting debts due it or enforcing any rights on property securing the same" is very significant activity. Even before the statute (§ 33–397) was adopted, the decisional authority in Connecticut never strained the term "transacting business" to embrace activities incidental to the main business of the corporation in order to find a basis for exercising jurisdiction over a foreign corporation. Surveyors, Inc. v. Berger Bros. Co., 9 Conn.Supp. 175 (1941); Utility Economy Co., Inc. v. Luders Marine Const. Co., 15 Conn. Supp. 213 (1947).

It is clear that Connecticut courts would not regard Berkeley's activities as "transacting business" in violation of § 33–396, so as to make it amenable to service under § 33–411(b).

## TORTIOUS CONDUCT
## IN THIS STATE

Section 33–411(c) (4) permits substituted service upon a corporation "whether or not such corporation is transacting business in this state", if the cause of action arises out of "tortious conduct in this state." The threshhold problem is what method should be used to test whether the defendants committed "tortious conduct in this state" in this proceeding brought under Rule 12(b) (2) F.R.Civ.P., 28 U.S.C.A., to dismiss for lack of jurisdiction over the person. Because the scope of the inquiry is limited to where the acts were committed and not whether they were tortious, this does not become "the type of case where the question of jurisdiction is dependent on decision of the merits", as in Land v. Dollar, 330 U.S. 731, 735, 67 S.Ct. 1009, 1011, 91 L.Ed. 1209 (1947).

In similar motions brought under rule 12(b) (2) to dismiss for lack of jurisdiction over the subject matter, the courts have pointed out that, "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." Gibbs v. Buck, 307 U.S. 66, 71–72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939); cf. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 184 et

seq., 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Williams et al. v. Minnesota Mining & Mfg. Co., D.C.S.D.Cal., 1953, 14 F.R.D. 1.

Since both parties have submitted affidavits, without any direction from the court, the motion will be tested upon those.[2] So far as disclosing the place where the alleged tortious conduct of the defendants occurred, the plaintiff's affidavit states nothing. Where the defendants' conduct occurred can hardly be regarded as immaterial, when the statute precisely reads "tortious conduct in this state." In the following cases, arising out of tortious conduct which resulted in injuries to the respective plaintiffs, the place where the defendant acted was determinative of a refusal to exercise jurisdiction. In Hellriegel v. Sears Roebuck Co., D.C.N.D.Ill.E.D., 1957, 157 F.Supp. 718, the court held that an Illinois statute, Ill.Rev.Stat.1957, c. 110, § 16, permitting substituted service for actions arising out of "the commission of a tortious act within the State" did not encompass a cause of action arising out of the negligent manufacture of a lawn mower in a state outside Illinois. In Insull v. New York World-Telegram Corp., D.C.N.D.Ill.E.D., 1960, 172 F.Supp. 615, the same court held that libel published outside of Illinois did not give rise to tortious acts within. In Trippe Manufacturing Co. v. Spencer Gifts Inc., 7 Cir., 1959, 270 F.2d 821, the Court of Appeals ruled that mailing catalogs into Illinois containing false statements did not constitute tortious acts in Illinois. In Mueller v. Steelcase, Inc., D.C.Minn., 1959, 172 F.Supp. 416, the court held that negligent manufacture outside Minnesota did not constitute a tort committed in whole or in part in Minnesota

within the meaning of their statute. But see: Hutchinson v. Boyd & Sons Press Sales, Inc., D.C.Minn., 1960, 188 F.Supp. 876. And finally, in Johns v. Bay State Abrasive Products Co., D.C. Md., 1950, 89 F.Supp. 654, the court held that negligent manufacture in Massachusetts would not constitute an "act" done in Maryland.

■ Although Connecticut courts have not ruled upon the pertinent provision, there is no reason to expect that it would set its law against that declared in the cited cases. To the extent that this is perforce, only an "estimate" of what the Connecticut court "would rule to be its law", the concurring opinion of Justice Frankfurter in Bernhardt v. Polygraphic Co., 350 U.S. 198, at p. 209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956), permits it to be made. Vilcinskas v. Sears Roebuck & Co., 144 Conn. 170, 173, 127 A.2d 814 (1956), has disposed of any attempt at distinguishing "conduct" in Connecticut's statute from "acts" which is found in the similar Illinois statute. And Handler v. Remington Arms Co., 144 Conn. 316, at p. 321, 130 A.2d 793 (1956), decided that an "act" has a significance sufficiently independent from the injury resulting from it to begin the statutory period of limitations from the date of the former instead of the latter. Cf. Richards et al. v. United States of America, 82 S.Ct. 585.

In the Connecticut statute, the emphasis is unmistakably upon the *place where* the tortious conduct occurred. It requires tortious *conduct in this state*. This is a jurisdictional fact. It has not even been alleged. The missing fact has not been supplied by affidavit or otherwise.

2. Although treated differently than a motion to dismiss under Rule 12(b) (6) for failure to state a claim, where reliance is placed upon the allegations of the complaint, see Land v. Dollar (supra) fn. 4, no different result would be reached in any event because the allegations of the complaint do not show where the tortious conduct took place.

The complaint alleges only:
"6. The Defendant BERKELEY FINANCE CORPORATION, on or about August 25, 1961, represented to certain Plaintiff's retail accounts that Plaintiff had requested it to take over Plaintiff's accounts receivable for collection."

The result would not be different had the case been left for a state court determination. In Williams Co. v. Mairs et al., 72 Conn. 430, 44 A. 729 (1899), service of a writ by foreign attachment within the state upon one member of a New York partnership indebted to the non-resident defendant would have been adequate under state statutes to obtain valid jurisdiction if the partnership or its agent had been engaged in business in Connecticut. In granting a motion to erase, the court held that its want of jurisdiction appeared upon the face of the record, since it did not appear that the partner was engaged in partnership business in this state. On appeal, the high court held (p. 435, 44 A. p. 730) that a plea to the jurisdiction "was unnecessary, since it was for the plaintiff to see that the record * * * was indispensable to give jurisdiction." The net fashioned by the provisions of Conn. Gen.Stats. § 33–411(c) (4) (Rev. of 1958) is not wide enough to reach the defendants.

### APPLICABILITY OF STATE LAW

■ There is no doubt that Connecticut might have extended its power over foreign corporations further than it has chosen to under § 33–411. The test of jurisdiction is no longer based on a fictional "presence" arising from "transacting" or "doing business", McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), but is realistically based upon a balancing of interests to test whether the exercise of jurisdiction offends "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); and see: L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc., 9 Cir., 1959, 265 F.2d 768, 773–774, fn. 12; Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 4 Cir., 1956, 239 F.2d 502, 507–508.

This case was removed to this court from the state court by the defendants, and the plaintiff may be regarded as having consented, since in its brief it urges, "But even if the action could not have been maintained in the state courts of Connecticut, it should not be dismissed in the federal courts when diversity of citizenship and other prerequisites of federal jurisdiction exist." The defendants, having conceded that the manner of service upon them was valid, "The resulting situation is equivalent to initiating an action in the District Court in which the defendant appears." Bailey v. Texas Co., 2 Cir., 1931, 47 F.2d 153, 155.

The defendants, by removal of this case to the federal courts, have not permitted the state court to determine the extent to which Connecticut has imposed a self-limitation upon the power of its court to take jurisdiction over them. They contend that this court must, nevertheless, make that determination because, in a diversity case, the question is not whether a state might have asserted its power, but whether it has done so, as held in Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193, and followed in Partin v. Michaels Art Bronze Co., 3 Cir., 1953, 202 F.2d 541, and Canvas Fabricators, Inc. v. William E. Hooper & Sons Co., 7 Cir., 1952, 199 F.2d 485. An application of that principle, as enunciated in Pulson, to the facts here would leave little doubt that Connecticut has fashioned a statutory shield of immunity broad enough to protect Berkeley, both against state penalties and against disabilities which attach to the wrongful failure to obtain a certificate of authority from its Secretary of State, as well as against being held to answer to this suit in its courts initiated by process served beyond its borders.

■ In this circuit, however, that principle would not apply. Jaftex Corp. v. Randolph Mills, Inc., 2 Cir., 1960, 282 F.2d 508, 510. To read the concluding statement in the majority opinion by Judge Clark as explicitly holding (p. 516) that "whether a foreign corporation is *present* in a district to permit

of service of process upon it is one of the federal law governing the procedure of the United States courts and is to be determined accordingly", appears to be correct, especially when Judge Friendly, for the purpose of identifying the target of his contrary view, reframed it in these words:

"However, I cannot join in the alternative ground of the opinion, namely, that if Randolph Mills were not sufficiently active in New York to subject it to suit in the New York courts, it may nevertheless be summoned before a federal court sitting in New York if it is doing enough in New York so that such an assertion of power over it would not violate due process." (concurring opinion, p. 516)

This court must regard the holding as broad enough to require it to test only whether jurisdiction over Berkeley is within the permissible limits of due process, where state policy goes no further than to give a foreign corporation the benefit of a qualified limitation upon a plaintiff's choice of forum. That issue, though not specifically present in Jaftex, was considered so fully in the court's reasoning (in the majority opinion, p. 514 and in the concurring opinion, pp. 521, 522), that this court, happily, may regard the case as deciding it. McGee v. Southern Pacific Co., S.D.N.Y., 1957, 151 F.Supp. 338; Douds on Behalf of National Labor Relations Board v. Sheet Metal Workers International Ass'n, E.D.N.Y., 1951, 101 F.Supp. 273, 277. The fact that contrary views have been expressed by Courts of Appeals for other circuits would not authorize me to reject the reasoning of my own Circuit Court of Appeals. McComb v. Frank Scerbo & Sons, Inc., S.D.N.Y., 1948, 80 F.Supp. 457, 460, aff'd, 2 Cir., 177 F.2d 137.

### MINIMAL CONTACTS

Using the formula created by International Shoe Co. v. State of Washington (supra) to find the permissible limits of due process in this case, this court finds that there were sufficient acts within the State of Connecticut by Berkeley so that it would not be unreasonable to require it to defend this particular suit in this court. Id., 326 U.S. at pp. 317, 320, 66 S.Ct. 154. This court is not required to refrain from weighing the activities which the affidavits establish that it carried on merely because the state court might not place them on the scales. Jaftex Corp. v. Randolph Mills, Inc. (supra). Berkeley's business of commercial financing and factoring in this state for corporations was not limited to the plaintiff. Berkeley's activities with the plaintiff directly touched the business of many retail outlets throughout the state. It is seeking to collect money from them in payment of debts incurred to the plaintiff.

In the event of a trial, most of the witnesses will be found here. Berkeley itself is in Boston, almost within the reach of a subpoena to this court. To apply the test of reasonableness first used by Judge Learned Hand in Hutchinson v. Chase & Gilbert, Inc., 2 Cir., 1930, 45 F. 2d 139, and transpose his statement to fit the spatial facts here, "It is fairer that the defendants should come here than that the plaintiff should go to Boston."

Thus, although the plaintiff could not enter its state courts to sue Berkeley on this cause of action, arising out of its tortious conduct, exercise of jurisdiction over Berkeley in this court in a suit upon that cause of action is well within the limits of permissible due process. The extent of Berkeley's contacts in Connecticut, when added to the effects directly caused within the state by its conduct, although committed outside the state, exceed the "minimal contacts" suggested in International Shoe Co. v. State of Washington (supra). Connecticut's statutes do not create blinders for this court. Jaftex Corp. v. Randolph Mills, Inc. (supra). Without them, it may see

and take into account all of Berkeley's activities in the state, as well as those out-of-state which cause injury within the state. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Johns v. Bay State Abrasive Products Co. (supra); Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc. (supra).

The affidavits do not reveal significant differences between the activities of Shapiro Brothers Factors Corporation and those of Berkeley, except that Shapiro Brothers received additional security in the form of mortgages on real property, and some of its activities were carried on by Berkeley in its behalf; nor would it be unfair to require Shapiro Brothers to come to Connecticut from its offices in New York City.

The motion of the defendants to dismiss for lack of jurisdiction over them is denied.

IT IS SO ORDERED.