JOSEPH MELILLO, JR. *v.* MONARCH WINE COMPANY, INC.

COURT OF COMMON PLEAS    NEW HAVEN COUNTY    FILE NO. 81130

Memorandum filed March 30, 1971

*Alan E. Silver* and *George L. Eastman,* both of New Haven, for the plaintiff.

*Schatz & Schatz,* of Hartford, for the defendant.

MIGNONE, J. In this case the defendant, appearing specially, has filed a plea in abatement challenging the jurisdiction of this court over the defendant. The plaintiff filed a denial of the allegations therein set forth, and the court held a hearing in which testimony was taken.

Hatton, a friend of the plaintiff, testified that he was attending a convention at a hotel in New York and sent out for the purchase of a case of champagne. The champagne delivered was distributed by the defendant, the Monarch Wine Company. Hatton

took three bottles of this champagne back to Connecticut where he gave the plaintiff, as a gift at Christmas 1967, one bottle which was asserted to be in the same condition as when purchased. The plaintiff claims that this bottle, received as a Christmas gift, exploded in Connecticut, causing injury to an eye.

The defendant offered as an exhibit at the hearing a duly certified copy, from the office of the secretary of state of Connecticut, attesting that the defendant was not authorized to transact business in Connecticut at any time. The plaintiff's complaint makes no allegations that the defendant conducted any business in this state.

The memorandum of law submitted by the plaintiff advances the claim that the basis for jurisdiction in this court lies in General Statutes § 33-411 (c) (4). This portion of § 33-411, which the plaintiff claims to be controlling of the issue, provides that a foreign corporation shall be subject to suit in Connecticut by a resident of this state, "whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: . . . (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, whether arising out of misfeasance or nonfeasance." Subsection (c) has remained intact in language since its enactment in 1959. Public Acts 1959, No. 618 § 129.

The plaintiff's memorandum argues merely that "tortious conduct of the defendant occurred within the jurisdiction of Connecticut, and therefore, the service is valid." Cited in support of this claim is *Southern New England Distributing Corporation* v. *Berkeley Finance Corporation,* 30 F.R.D. 43 (1962),

in which the United States District Court for the district of Connecticut denied a motion for dismissal for lack of jurisdiction. But the opinion therein clearly brings out (p. 49) that the rationale of the decision was based on the fact that "there were sufficient acts within the State of Connecticut by Berkeley so that it would not be unreasonable to require it to defend this particular suit in this court." And, at page 46, it devotes an entire section, captioned "TORTIOUS CONDUCT IN THIS STATE," to a discussion of the language of the Connecticut statute in issue, § 33-411 (c) (4). It points out (p. 47) that in that case the plaintiff's affidavit states nothing as to where the alleged tortious conduct of the defendants occurred, and is careful to note that this aspect "can hardly be regarded as immaterial, when the statute precisely reads 'tortious conduct in this state.'" It continues to cite a number of cases where "the place where the defendant acted was determinative of a refusal to exercise jurisdiction." The decision states significantly (p. 47) that "[a]lthough Connecticut courts have not ruled upon the pertinent provision, there is no reason to expect that it would set its law against that declared in the cited cases." And, giving no support to plaintiff's position, the opinion adds that "[i]n the Connecticut statute, the emphasis is unmistakably upon the *place where* the tortious conduct occurred. It requires tortious *conduct in this state.* This is a jurisdictional fact. It has not even been alleged. The missing fact has not been supplied by affidavit or otherwise." The conclusion (p. 48) that "[t]he net fashioned by the provisions of Conn. Gen. Stats. § 33-411 (c) (4) . . . is not wide enough to reach the defendants" is applicable here also.

A later case decided in the same District Court, *Marvel Products, Inc.* v. *Fantastics, Inc.*, 296 F. Sup. 783 (1968), dealt with the issue of whether the de-

fendants were marketing adhesive appliques under labels constituting unfair competition to the plaintiff. The decision (p. 787) makes it clear that, "[t]herefore, jurisdiction may be founded on § 33-411 (c) (4) only if the *passing off by the defendant* of products in a package carrying the allegedly infringing mark was done in Connecticut." Stressing that no sales, no advertising and no solicitation of business occurred in Connecticut, it reaches the conclusion that, "[t]here having been no tortious conduct by the defendant within Connecticut, there is no jurisdiction under § 33-411 (c) (4)."

The law relating to the extent of in personam jurisdiction under "long-arm" statutes such as our Connecticut statute, § 33-411, has been undergoing a process of refinement and broadening out. Most of the statutes enacted, including our own, derive from the Illinois statute. Ill. Rev. Stat., c. 110 § 17 (1) (b) (1959). That statute provided that a nonresident who, either in person or through an agent, commits "a tortious act within this State" submits to jurisdiction.

*Gray* v. *American Radiator & Standard Sanitary Corporation,* 22 Ill. 2d 432 (1961), did uphold jurisdiction of the Illinois court in a situation where the defendant, a non-Illinois corporation, had manufactured a valve used in a water heater which had exploded and injured the plaintiff in Illinois. The case (p. 435) makes the distinction that the wrong arose out of acts performed at the place of manufacture in Ohio and that only the consequences occurred in Illinois. Addressing itself to the issue raised by the defendant that to confer jurisdiction upon the court would violate the requirement of due process, the court, in its decision (p. 438), is careful to make the reservation that "where such business or other activity is not substantial, the particular act or transaction having no connection with the

State of the forum, the requirement of 'contact' is not satisfied," citing *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958). And it caveats (p. 440) that "[w]hether the type of activity conducted within the State is adequate to satisfy the requirement depends upon the facts in the particular case." This is a flexible test, it clarifies further, in which "the relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum." In the *Gray* case, the court based its decision on a reasonable inference that this test was met, finding (p. 442) that the alleged liability arose "from the manufacture of products presumably sold in contemplation of use here." See also *Keckler* v. *Brookwood Country Club*, 248 F. Sup. 645 (1965), which quashed a service of process in a suit in tort for personal injuries where a motorized golf cart, which a defendant corporation manufactured in Indiana and sold in Indiana to a company which in turn delivered it in Illinois, tipped over and fell, causing injuries.

It is, therefore, of considerable significance to note that the complaint in the instant matter contains only a minimal allegation, that the defendant supplied the plaintiff and/or his agent with a certain bottle of champagne under a contract to sell said bottle of champagne to be consumed by him, which purpose was known to the defendant.

Many of the "long-arm" statutes rely on the "minimum contacts" test set out in the leading case of *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945). See *Horn Construction, Inc.* v. *Stran-Steel Corporation*, 26 Conn. Sup. 201 (1965).

Going to the crux of the instant issue, reference must be made to certain decisions of the New York courts dealing with this same question. The com-

panion cases of *Feathers* v. *McLucas* and *Singer* v. *Walker,* 15 N.Y.2d 443, decided by the New York Court of Appeals in 1965, raised the issue as to whether the New York court acquired personal jurisdiction under its long-arm statute (N.Y. Civ. Prac. Law § 302 [McKinney 1963]) in situations involving tortious conduct. Paragraph (a) (2) of that statute required that it be shown that the defendant committed a tortious act within the state. In *Feathers* v. *McLucas,* supra, the plaintiffs sought to recover for personal injuries as a result of an explosion, on a public highway in New York, of a tractor-drawn steel tank, en route from Pennsylvania to Vermont, containing highly inflammable liquefied propane gas. The tank had been manufactured in Kansas by one defendant, a Kansas company, under a contract with a Missouri corporation, which mounted the tank on a wheelbase and sold it to a Pennsylvania corporation, operating as an interstate carrier, whose route included New York state. The decision (p. 462) lays stress on the language of the New York statute which requires that the " 'tortious act' be one committed by the defendant, 'in person or through an agent,' *within* this State."

In the *Feathers* case, the court refused to accept the holding of the Illinois court in *Gray* v. *American Radiator & Standard Sanitary Corporation,* 22 Ill. 2d 432, in its interpretation of the Illinois statute, finding the reasons given for upholding jurisdiction in that case unconvincing. The decision in *Feathers* states (p. 463): "[T]he place of the 'tort' is not necessarily the same as the place of the defendant's commission of the 'tortious act.' " It summarizes its holding, stating (p. 464): "It follows, therefore, that, since the tortious act charged against the appellant Darby was committed, if at all, in Kansas and since, concededly, that company transacted no business what-

soever in New York, no basis exists in the present case for subjecting it to the jurisdiction of the courts of this State." In *Singer* v. *Walker,* 15 N.Y.2d 443, the New York court held that the tortious acts attributed to the defendant appellant in the manufacture and labeling of a geologist's hammer which Michael Singer was using in Connecticut occurred at the place of manufacture in Illinois. The court unequivocally states (p. 466) that the "tortious conduct charged to the appellant consists solely of its acts in manufacturing an assertedly defective hammer and in attaching to it a false label, both of which unquestionably took place in Illinois." The case of *Harvey* v. *Chemie Grunenthal, G. m. b. H.,* 354 F.2d 428 (1965), upholds the decisions in the *Feathers* and *Singer* cases.

To fill the jurisdictional void pointed up by the *Feathers* and *Singer* cases, a new subdivision was added to the New York long-arm statute. N.Y. Sess. Laws 1966, c. 590. Subdivision (a) (3) of § 302, effective September 1, 1966, now provides that personal jurisdiction over any nondomiciliary may be had where a nondomiciliary "commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

Weinstein, Korn & Miller, New York Civil Practice ¶ 302.10a, discusses at some length the legal effects brought about by the addition of § 302 (a) (3), emphasizing that the added section now permits the New York courts to take in personam jurisdic-

tion where a tortious act committed without the state comes within the provisions set out in subsections (i) and (ii).

A 1968 case in the United States Court of Appeals for the second circuit, *Friedr. Zoellner (New York) Corporation* v. *Tex Metals Co.,* 396 F.2d 300, upheld the lower court's dismissal of the action on the grounds of lack of jurisdiction in New York under the long-arm statute. It refers (p. 302) to the legislative history leading up to the enactment of § 302 (a) (3) (ii) of the New York Civil Practice Law and Rules and points out that "this section was enacted to fill the gap caused by the decision of the New York Court of Appeals in Feathers v. McLucas, 15 N.Y.2d 443, 458–464." And, at page 303, it adds that § 302 (a) (3) "is not satisfied by remote or consequential injuries which occur in New York only because the plaintiff is domiciled, incorporated or doing business in the state." Reference may also be made to the annotation in 19 A.L.R.3d 13, "Products Liability: In Personam Jurisdiction over Nonresident Manufacturer or Seller under 'Long Arm' Statutes."

The plaintiff relies solely on the language of General Statutes § 33-411 (c) (4), contending that the tortious conduct of the defendant occurred within the jurisdiction of Connecticut and therefore the service is valid. *Southern New England Distributing Corporation* v. *Berkeley Finance Corporation,* 30 F.R.D. 43, relied upon by the plaintiff, does not support his position.

Based on the authorities above discussed, this court must reach the conclusion that the tortious act charged against the defendant was committed, if at all, in New York. And since no allegation is even made in the complaint that the defendant transacts

any business whatever in Connecticut, this court can find no basis upon which it can subject the defendant to the jurisdiction of a Connecticut court.

Accordingly, the defendant's plea in abatement is sustained.