WINCHESTER ELECTRONICS CORPO-
RATION, Plaintiff,

v.

GENERAL PRODUCTS CORPORA-
TION, Defendant.

Civ. No. 8742.

United States District Court
D. Connecticut.

Sept. 28, 1961.

———◇———

Edward R. McPherson, Jr., Cummings & Lockwood, Morgan P. Ames, David Albert, Stamford, Conn., for plaintiff.

Peter C. Dorsey, Gumbart, Corbin, Tyler & Cooper, New Haven, Conn., for defendant.

ANDERSON, Chief Judge.

The defendant claims that it was not properly served and has, therefore, moved to dismiss. The plaintiff claims

that the defendant was doing business in the State of Connecticut and that service was properly made on it pursuant to Rule 4(d) (7), F.R.Civ.P., 28 U.S.C.A., which authorizes service "in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in courts of general jurisdiction of that state." The statute invoked by the plaintiff is § 52–59a of the Conn. Gen.Stats., Rev. 1958, which provides as follows:

" * * * any nonresident individual or foreign partnership or corporation which transacts business in this state, personally or by an agent, salesman, employee, officer or director or another, shall be deemed to have appointed the secretary of the state as its attorney and to have agreed that any process in any civil action brought against such nonresident individual or foreign partnership or corporation may be served upon said secretary and shall have the same validity as if served upon such nonresident individual or foreign partnership or corporation personally. Such process shall be served by the officer to whom the same is directed upon said secretary by leaving with or at the office of said secretary, at least twelve days before the return day of such process, a true and attested copy thereof, and by sending to the defendant, by registered or certified mail, postage prepaid, a like true and attested copy with an endorsement thereon of the service upon said secretary addressed to such defendant at his last-known address. * * * "

It is undisputed that two copies of the writ and complaint were served upon the Secretary of the State of Connecticut, that a copy was sent to the defendant by registered mail, and that the defendant duly received it.

■■ The first issue to be discussed is whether federal or state law is controlling in determining the adequacy and effectiveness of the service of process in this case. This calls for two separate considerations, first, the presence of the corporation in the district to permit of service of process and, second, the method of making service of process. With regard to the first, it has been held in this district "that the question whether a foreign corporation is present in a district to permit of service of process upon it is one of federal law governing the procedure of the United States courts and is to be determined accordingly." Jaftex Corporation v. Randolph Mills, Inc., 2 Cir., 1960, 282 F.2d 508, 516. The second consideration is dealt with in Rule 4(d) (7), F.R.Civ.P., where, as in this case, the method of service is one prescribed by the law of the state. The federal court must also be satisfied that the pertinent provisions of the state law are reasonable and just according to traditional notions of fair play and substantial justice and, thus, satisfy due process under the Federal Constitution, Amend. 14. International Shoe Co. v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

The facts of this case must, therefore, be viewed in the light of the standards established for corporate presence for amenability to service of process as discussed in Jaftex, supra, the requirements of the Connecticut statute here invoked for service of process, and the due process considerations.

■ It appears to be undisputed, from the evidential material submitted, that the plaintiff is a Connecticut corporation having its principal place of business in that state, and the defendant is a New York corporation with its principal place of business in Union Springs, New York. Presence by the defendant in the State of Connecticut for service of process is determined by the extent to which the defendant has transacted business in the State. The defendant has been carrying out a continuous program of solicitation

in the State of Connecticut through its officers, through a resident engineering consultant, one Quackenbush, and through a manufacturing representative. All orders are subject to acceptance and approval at the main office in New York, but customer leads are furnished to its sales representatives by the defendant; prices are quoted to prospective customers directly by the defendant, and the defendant's officers and Quackenbush pay calls on customers and prospective customers within the State of Connecticut, from time to time, to seek additional business and to discuss engineering and manufacturing problems connected with various items sold by the defendant. Although the defendant seeks to characterize its contract with Quackenbush as an independent contract with a consultant, its actual terms show that it is more accurately in the nature of a contract of employment. The defendant must have agreed with this interpretation to the extent that it felt obliged to include him in its Workmen's Compensation coverage. Quackenbush is required by the terms of the contract to devote the major part of his time and attention and give his best effort and skill in the business and interest of the defendant. The defendant has the exclusive rights to any discovery or invention by Quackenbush and to all patents with regard to electrical connectors or the improvements thereof. Quackenbush's compensation consists of a basic salary of $1,000 per month, plus a percentage of the net sales of the defendant in excess of $400,000 per year. The defendant also has a contract with Standard Connector Corporation, a Connecticut corporation having its principal place of business in New Haven, Conn., under the terms of which the defendant is the exclusive distributor or sales agent in the United States and Canada for contact pins manufactured by Standard Connector; and the defendant has agreed to purchase all of the contact pins which it needs and uses in its manufacturing processes solely from Standard Connector. Although the contract does not so state, Standard Con-

nector is, in fact, a distributor for the defendant's terminal boards in Connecticut. Quackenbush is the president of and owns a substantial block of the stock of Standard Connector Corporation. The defendant's business in Connecticut is not incidental or casual. Its purchases in Connecticut between April 12, 1960 and May 25, 1961 totaled $350,000 and its sales in the State of Connecticut for the year ending May 1, 1961 totaled $39,005. The defendant's alleged tortious conduct arose from its business dealing in the State of Connecticut.

It seems abundantly clear that there is much more than "the little more" required over and above the solicitation of business where, as here, the business is substantial and continuous as set forth in the majority opinion in Jaftex, supra. Moreover, it appears that the facts of the present case would satisfy the standard adopted by the Third Circuit in Partin v. Michaels Art Bronze Co., 3 Cir., 1953, 202 F.2d 541, adopted by the concurring opinion in Jaftex which is "federal courts sitting in a state may not exercise jurisdiction over a foreign corporation unless the state has 'provided for bringing the foreign corporation into its courts under the circumstances of the case presented.'" [282 F.2d 517.]

There are no Connecticut cases which construe the clause "which transacts business in this state" in § 52–59a, the Connecticut statute above quoted, but the apparent purpose of this legislation was to provide a method for obtaining jurisdiction over foreign corporations and others which had not formally designated the secretary of the state an agent for service of process, but which, nevertheless, had engaged in sufficient activity in the state to warrant their amenability to suit in the state under the broad principles defined in International Shoe Co. v. Washington, supra, and its progeny. Prior to the enactment of this section, there had been no provision in Connecticut law for such service.

It is notable that the governing section was enacted at the same session of the

legislature as the Stock Corporation Law. § 33–411 of the Corporation Law provides for service on the secretary of the state and makes foreign corporations subject to suit on causes of action arising "(4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance." The Corporation Law became effective January 1, 1961 while § 52–59a became effective on October 1, 1959; however, one commentator believes they "exist in the law side by side." Cooper, "New Connecticut Corporation Laws", 34 Conn.B.J. 225, 238 (1960). The wording of the two statutes, read in the light of the "solicitation plus" doctrine of prior Connecticut case law, Alfred M. Best Co., Inc. v. Goldstein, 1938, 124 Conn. 597, 1 A.2d 140; Moore v. Crestwood Manor, Inc., 1953, 18 Conn. Sup. 387, indicates a desire by the legislature to enlarge the scope of jurisdiction to the greatest permissible extent.

It, therefore, seems clear that the Connecticut courts would hold that General Products Corporation "transacts business" in the state to a sufficient degree to subject it to process under the provisions of § 52–59a.

With regard to due process, it is apparent that the activities of the defendant were systematic and continuous. The alleged tortious conduct sued upon, grew out of those very activities. The method of service of process provided for by the Connecticut statute "gives reasonable assurance that the notice will be actual" and is "reasonably calculated to apprise [the defendant] of the suit." International Shoe Co. v. Washington, supra, 326 U.S. at page 320, 66 S.Ct. at page 160. Subjecting the defendant to suit in the courts of Connecticut or in the federal court for the District of Connecticut does not appear contrary to the traditional concepts of fair play and substantial justice.

■■■ In addition to its claim of improper service of process, the defendant, as a second ground in support of its motion to dismiss, claims that Quackenbush and Standard Connector are indispensable parties whose joinder would destroy diversity jurisdiction because both are citizens of Connecticut. The general rule is that indispensable parties are "persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." 3 Moore, Federal Practice, ¶ 19.07 (2d ed., 1948). Shields v. Barrow, 1854, 17 How. 129, 130, 15 L.Ed. 158; State of Washington v. United States, 9th Cir., 1936, 87 F.2d 421, 427.

The relief sought in the complaint in this action is either monetary damages or injunctive relief or both. As to money damages, the claimed indispensable parties do not even have an interest in the controversy; and as far as any injunctive relief is concerned, they can be affected only incidentally, if at all. They have no greater interest than those of any other persons who may have contracts to purchase manufactured items from the defendant which, as a result of this action, the defendant may be unable to perform. Actually, the plaintiff is not suing to set aside any contracts into which the defendant has entered but attacks the defendant as a tort-feasor. There is no law which requires an aggrieved party to sue all tort-feasors in a particular cause of action. Kerr v. Compagnie De Ultramar, 2 Cir., 1958, 250 F.2d 860; General Transistor Corp. v. Prawdzik, D.C.S.D.N.Y.1957, 21 F.R.D. 1; and Robbins Music Corp. v. Alamo Music, D.C.S.D.N.Y.1954, 119 F.Supp. 29, at page 31.

It does not presently appear that any inequity will be done the defendant by denying its motion to join the additional parties.

The motion to dismiss is denied.