**ELECTRIC REGULATOR CORPORA-
TION, Plaintiff,**

**v.**

**STERLING EXTRUDER CORPORA-
TION, Defendant.**

**Civ. No. 12031.**

United States District Court
D. Connecticut.

Jan. 22, 1968.

Lawrence P. Weisman, of Cohen & Wolf, Bridgeport, Conn., for plaintiff.

Lawrence W. Kanaga and Elaine S. Amendola, of Goldstein & Peck, Bridgeport, Conn., for defendant.

TIMBERS, Chief Judge.

## QUESTION PRESENTED

In this diversity contract action to recover the price of goods sold, defendant's motion to dismiss for lack of in personam jurisdiction, pursuant to Rule 12(b)(2), Fed.R.Civ.P., presents the question whether defendant, a foreign corporation, is amenable to service of process under Connecticut's long-arm statute, Conn.Gen.Stat. § 33–411 (1962).

The Court holds that, although defendant did not transact business in Connecticut within the purview of Section 33–411(b), the cause of action arose out of contracts made in Connecticut within the purview of Section 33–411(c) (1). Service of process upon defendant as a foreign corporation is authorized. Defendant's motion to dismiss is denied.

On the basis of the pleadings, exhibits and affidavits filed by the parties, the Court makes the following findings of fact and conclusions of law for the purpose of deciding this motion.

## FINDINGS OF FACT

(1) Plaintiff is a New York corporation having its offices and principal place of business in the State of Connecticut.

(2) Defendant is a New Jersey corporation having its offices and principal place of business in that state.

(3) The amount in controversy exceeds $10,000 exclusive of interest and costs.

(4) Since the requisite jurisdictional amount is involved and the requisite diversity of citizenship exists, this is a civil action over which this Court would have had original jurisdiction, 28 U.S.C. § 1332(a) (1), and the action therefore was properly removed from the Superior Court for Fairfield County to this Court, 28 U.S.C. § 1441(a).

(5) Between January 8, 1966 and May 26, 1966 defendant placed sixteen separate orders with plaintiff for the purchase of over $45,000 worth of machinery and equipment. Negotiations took place through plaintiff's New Jersey sales representative. The orders were sent either to plaintiff at its Connecticut office or in care of its sales representative in New Jersey.

(6) Defendant requested confirmation of its orders, and plaintiff sent these confirmations from Connecticut.

(7) Each of defendant's purchase order forms specified the address to which plaintiff was to ship the equipment and also instructed plaintiff to make shipment "via best way." The points to which the equipment was to be shipped were both in and out of the State of Connecticut.

(8) Plaintiff made all shipments F.O.B. Norwalk, Connecticut, delivering

the equipment to carriers located in Connecticut.

(9) Defendant does not possess a certificate of authority to transact business in the State of Connecticut.

(10) Defendant has no office, place of business, resident employees, officers, directors, or inventory within the State of Connecticut; nor does it have telephone or business directory listings in the state.

(11) Defendant does sell its products to at least three Connecticut companies and sends at least one sales representative to make calls in Connecticut.

(12) At defendant's request, plaintiff has serviced equipment sold by defendant to customers in Connecticut.

## CONCLUSIONS OF LAW

■ (1) The instant cause of action did not arise out of business transacted by defendant in the State of Connecticut within the meaning of Conn.Gen.Stat. § 33–411(b).

■ (2) The contracts in issue were made in Connecticut and, therefore, Conn.Gen.Stat. § 33–411(c) (1) authorizes the exercise of jurisdiction over defendant.

■ (3) Risk of loss having passed to defendant in Connecticut, the application of Conn.Gen.Stat. § 33–411(c) (1) is not unconstitutional.

■ The Court having valid in personam jurisdiction over defendant, defendant's motion to dismiss pursuant to Rule 12(b) (2), Fed.R.Civ.P., must be denied.

## OPINION

(1) *Applicability of Connecticut's Long-arm Statute, Conn.Gen.Stat. § 33–411.*

■■ In the instant action removed to this Court from a state court, as in any diversity action, the rule is clear that the federal court must apply the state standard for determining a defendant's amenability to service of process. Arrowsmith v. United Press International, 320 F.2d 219 (2 Cir. 1963) (en banc), overruling Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 508 (2 Cir. 1960); Bomze v. Nardis Sportswear, Inc., 165 F.2d 33, 35 (2 Cir. 1948). No federal standard may serve to confer jurisdiction, but where the state standard purports to permit the exercise of in personam jurisdiction, the Court must determine whether the application of the state standard would contravene federal due process requirements. See Arrowsmith v. United Press International, supra, at 223.

Thus, the amenability of defendant, a New Jersey corporation, to service of process in Connecticut depends upon the applicability of Connecticut's long-arm statute, Conn.Gen.Stat. § 33–411. If Section 33–411 properly authorizes service upon defendant in the circumstances presented here, then, since the manner of service is not challenged, this Court has jurisdiction over defendant.[1]

Section 33–411 authorizes service of process on foreign corporations in several alternative situations:

"(a) Service of legal process [may be made] on a foreign corporation authorized to transact business in this state . . .

(b) Every foreign corporation which transacts business in this state in violation of section 33–395 or 33–396 shall be subject to suit in this state upon any cause of action arising out of such business.

(c) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or

---

I. Rule 4(e), Fed.R.Civ.P., permits service of process in the manner prescribed by state statute. Where service is authorized upon a foreign corporation by Conn. Gen.Stat. § 33–411, that statute also governs the manner in which service must be made. Defendant concedes that if Section 33–411 authorizes service upon it, then service was properly made. Cf. LaPointe Industries, Inc. v. Model Engineering & Manufacturing Corp., Civil No. 9497 (D.Conn. April 6, 1963).

has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; . . . "

■ Where, as here, a defendant has not obtained a certificate of authority to transact business in Connecticut, Section 33–411(a) does not apply. Nevertheless, Section 33–411(b) sanctions service upon an uncertified foreign corporation if two requirements are met. First, the foreign corporation must have transacted business within the state so as to violate Section 33–396 which requires foreign corporations transacting business within the state to obtain certification.[2] Second, the cause of action upon which the foreign corporation is being sued must have arisen from those business transactions. It is plaintiff's first contention, disputed by defendant, that defendant transacted business within the purview of Section 33–411(b).

### (2) *Defendant Did Not Transact Business In Connecticut Within Purview of Section 33–411(b).*

■ Plaintiff claims that, even though defendant maintains no office, resident salesmen, employees, inventory, telephone, or business listing within the state, defendant still has transacted business here. In support of its argument, plaintiff relies on (i) the contracts between it and defendant which form the basis of this action, (ii) the fact that defendant has sent a sales representative into the state and has made sales to several Connecticut customers, and (iii) the fact that defendant has instructed plaintiff to make calls on some of these same Connecticut customers to service equipment sold to them by defendant. But, as has already been noted, Section 33–411 (b) restricts consideration to those activities out of which the cause of action

arose. The instant cause of action is based on the purchase of machinery and equipment by defendant from plaintiff; the latter two categories of activities cited by plaintiff, therefore, are not relevant here.

■ In considering whether the facts surrounding the purchase contracts make Section 33–411(b) applicable, it is important to bear in mind that, while some states hold that the term "transacting business" should be interpreted in the broadest sense constitutionally permissible,[3] Connecticut is not such a state. The business transacted must be in violation of Section 33–396 which requires a foreign corporation transacting business in the state to obtain certification. And Section 33–397(b) specifically excludes many business activities from consideration in determining whether an uncertified foreign corporation is transacting business in violation of § 33–396. Among those activities not treated as business transactions under this legislative scheme is "the transacting of business in interstate commerce" and "soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts." Furthermore, Section 33–397(b) provides that the enumeration of certain exempted activities is not meant to preclude the finding that other activities do not constitute the transacting of business. Thus, "Connecticut, as a matter of state policy, has recognized the advantage of not imposing qualifications on the right of foreign corporations to conduct some kinds of commercial and financial transactions . . .." Southern New England Distributing Corp. v. Berkeley Finance Corp., 30 F.R.D. 43 (D.Conn. 1962).

The activities here fall well within the exclusion for interstate commerce. Cf. LaPointe Industries, Inc. v. Model En-

2. Section 33–395 is not relevant here.

3. See, e. g., N.Y. CPLR § 302(a) (1); Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 587 (2 Cir. 1965).

gineering & Manufacturing Corp., supra note 1. But even if they did not, the Court is convinced that the policy reflected in Section 33–397(b) compels the conclusion that defendant has not transacted business within the state in violation of Section 33–396. If a foreign corporation is not transacting business in the state when it repeatedly sends agents into the state to solicit buyers for its products, and is still not transacting business in the state when orders consistently are obtained as long as the corporation reserves the right to accept the orders outside the state, then certainly defendant did not transact business in Connecticut when it negotiated exclusively with plaintiff's representative in New Jersey, mailed all its orders from that state, and sent almost all these orders to the New Jersey address of plaintiff's representative.[4]

(3) *Cause of Action Arose Out of Contracts Made In Connecticut Within Purview of Section 33–411(c) (1).*

Although Section 33–411(b) is not applicable, Section 33–411(c) (1) authorizes the exercise of jurisdiction even though the foreign corporation has not transacted business in the state or has engaged only in interstate commerce if the cause of action arose out of a contract made or to be performed in the state. It is plaintiff's second contention that this provision applies here.

█ Defendant, when it sent its orders to plaintiff, requested confirmations. These confirmations were mailed by plaintiff from its Connecticut offices. Defendant does not dispute that these confirmations were necessary to create valid contracts, nor does it deny that the confirmations sent were accepted as proper. It is the general rule, followed in Connecticut, that a contract is considered made when and where the last thing is done which is necessary to create an effective agreement. LaPointe Industries, Inc. v. Model Engineering & Manufacturing Corp., supra note 1; Alfred M. Best Co. v. Goldstein, supra note 3, at 602; Restatement, Conflict of Laws § 326 (1934). Since the parties obviously contemplated use of the mails, the contracts were made where, and at the time when, defendant mailed the confirmations. Mercer Elec. Mfg. Co. v. Connecticut Elec. Mfg. Co., 87 Conn. 691, 89 A. 909 (1914); 1 Restatement of Contracts § 64 (1932); Restatement, Conflict of Laws § 326, comment (a) (1934). Thus, the contracts were made in Connecticut and the requirements of Section 33–411(c) (1) are clearly met.

Nevertheless, it is defendant's position that Section 33–411(c) (1) cannot constitutionally be applied here since the mere making of a contract in a state is not a sufficient contact to satisfy due process requirements even as these requirements have been construed by International Shoe Co. v. Washington, 326 U.S. 310 (1945), and its progeny. In support of this contention, defendant cites Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583 (2 Cir. 1965). Indeed, in that case the Court of Appeals rejected the third-party plaintiff's contention that jurisdiction over the third-party defendant in New York could be sustained solely on the ground that the contracts there involved were made in that state: "We fail to see in what material respect [the third-party defendant] invoked the benefits and protections

---

4. Cf. Southern New England Distributing Corp. v. Berkeley Finance Corp., 30 F.R.D. 43, 46 (D.Conn.1962). The opinion in that case noted that "[e]ven before the statute (§ 33–397) was adopted, the decisional authority in Connecticut never strained the term 'transacting business' to embrace activities incidental to the main business of the corporation in order to find a basis for exercising jurisdiction over a foreign corporation. Surveyors, Inc. v. Berger Bros. Co., 9 Conn.Supp. 175 (1941); Utility Economy Co., Inc. v. Luders Marine Const. Co., 15 Conn.Supp. 213 (1947)." See also Eljam Mason Supply, Inc. v. Donnelly Brick Co., 152 Conn. 483, 208 A.2d 544 (1965); Moore v. Crestwood Manor, Inc., 18 Conn. Supp. 387 (Super.Ct.1953); Alfred M. Best Co. v. Goldstein, 124 Conn. 597, 1 A.2d 140 (1938).

of New York law merely by negotiating and concluding goods contracts through the mails and by telephone with persons residing in New York." Id. at 587.

But assuming that Section 33–411(c) (1) could not constitutionally be invoked if the only contact with Connecticut were the technical making of a contract, it does not follow that the section would not apply if there were additional contacts which would satisfy due process standards. In fact, the section must be read to authorize the assertion of jurisdiction in every instance where a cause of action arises out of a contract made or to be performed here so long as there are sufficient total contacts to meet constitutional requirements. The qualifications engrafted on the term "transacting business" in Section 33–411 (b)—referred to at p. 554 supra—do not pervade the other provisions of Connecticut's long-arm statute which, taken as a whole, is meant to extend Connecticut's jurisdictional reach to the constitutional limits. Winchester Electronics Corporation v. General Products Corporation, 198 F.Supp. 355, 358 (D.Conn. 1961); Sheridan v. Cadet Chemical Corp., 25 Conn.Supp. 17, 20, 195 A.2d 766, 768 (Super.Ct.1963). Cf. Armor Bronze & Silver Co., Inc. v. Chittick, 221 F.Supp. 505, 514 (D.Conn.1963); Horn Construction, Inc. v. Stran-Steel Corp., 26 Conn.Supp. 201, 216 A.2d 833 (Cir. Ct.1965).

We turn then to the question whether there are sufficient additional contacts to justify applying the Connecticut long-arm statute. An extensive analysis of defendant's contacts with the state in light of International Shoe Co. v. Washington, supra, and later cases is believed to be unnecessary because Agrashell, Inc. v. Bernard Sirotta Co., supra, at 588–589, provides a ready answer. The Court of Appeals, having found that the mere making of a contract is not a sufficient basis for jurisdiction, then held that the real determining factor lay in the risk of loss; if the foreign third-party defendant bore the risk of loss when the goods were within the juris-

diction, then it "enjoyed the benefits and protections of New York law in an overt physical manner." The Court of Appeals then went on to state that:

"[w]e feel that in cases arising out of contractual relationships, the rules governing amenability to suit should be reasonably clear-cut, so that the parties may predict with some certainty the jurisdictional consequences of their conduct. See MacInnes v. Fontainebleau Hotel Corp., 257 F.2d 832, 833 (2 Cir. 1958). If these rules can be based on a body of law already well-established and well-understood, so much the better. The law relating to the passage of risk in the sale and carriage of goods meets this need, and at the same time it is directly relevant to the policies governing personal jurisdiction over foreign corporations." Id. at 589.

The undersigned has had occasion to cite this very rule as a desirable example of the type of predictable standard needed in the field. United States v. Montreal Trust Co., 358 F.2d 239, 244, 258 (2 Cir. 1966) (concurring-dissenting opinion), cert. denied, 384 U.S. 919 (1966). The advantage to everyone concerned of the rule's use is clear; it will be applied, as indeed it must be, in determining the instant motion to dismiss.

Defendant recognizes the significance of risk of loss but argues that the risk of loss was not transferred to defendant in Connecticut. There cannot be any serious disagreement in this respect, however, as to that part of the purchased equipment shipped directly to defendant's customers in Connecticut, since these goods never left the state; risk of loss necessarily was shifted to defendant at one point or another in Connecticut. As to the equipment shipped out of the state, while the question is more open to dispute, nevertheless the Court finds, from the exhibits and undisputed facts, that risk of loss was transferred to defendant when plaintiff put the goods in possession of the carriers in Connecticut.

Section 2–509(1) of the Uniform Commercial Code, in force in Connecticut as Conn.Gen.Stat. § 42a–2–509 (1), and also in force in New Jersey, provides:

> "Where the contract requires or authorizes the seller to ship the goods by carrier (a) if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier . . . but (b) if it does require him to deliver them at a particular destination and the goods are there duly tendered while in the possession of the carrier, the risk of loss passes to the buyer when the goods are there duly so tendered as to enable the buyer to take delivery."

Defendant contends that plaintiff was required to deliver the equipment at particular destinations. But defendant does not dispute the fact that the parties contemplated shipment of the goods F.O.B. Norwalk, Connecticut, as the invoices show. Conn.Gen.Stat. § 42a–2–319(1) (Uniform Commercial Code § 2–319(1)) provides that:

> "Unless otherwise agreed the term F.O.B., which means 'free on board,' at a named place, even though used only in connection with the stated price, is a delivery term under which (a) when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in section 42a–2–504 and bear the expense and risk of putting them into the possession of the carrier; or (b) when the term is F.O.B. the place of destination, the seller must at his own expense and risk transport the goods to that place and there tender delivery of them in the manner provided in section 42a–2–503; . . ."

Thus, an F.O.B. term must be read to indicate the point at which delivery is to be made unless there is specific agreement otherwise and therefore it will normally determine risk of loss. See W. Hawkland, Sales and Bulk Sales 93–94 (2 ed. 1958). Here the term used was F.O.B. Norwalk, Connecticut, indicating that these contracts were "shipment" contracts, as opposed to "destination" contracts, with risk of loss passing when plaintiff carried out the duties imposed upon it by Conn.Gen.Stat. § 42a–2–504 (Uniform Commercial Code § 2–504). Any doubt to the contrary is disposed of by Official Comment 2 to Uniform Commercial Code § 2–509(1) which explains that this section on risk of loss must be construed parallel to comparable language in Sections 2–503 and 2–504. Conn.Gen.Stat. § 42a–2–504 (Uniform Commercial Code § 2–504), covering "shipment" as opposed to "destination" contracts, requires the seller to:

> "(a) put the goods in the possession of . . . a carrier and make such a contract for their transportation as may be reasonable having regard to the nature of the goods and other circumstances of the case; and (b) obtain and promptly deliver or tender in due form any document necessary to enable the buyer to obtain possession of the goods or otherwise required by the agreement by usage of trade; and (c) promptly notify the buyer of the shipment."

Since it is undisputed that the plaintiff accomplished all of this while the goods were still in Connecticut, risk of loss passed to defendant in this state.

The only evidence cited by defendant to support its position that the contracts here involved were "destination" contracts rather than "shipment" contracts is the fact that there are "ship to" addresses on defendant's purchase order forms. However, "ship to" addresses must be supplied to a seller if he is to make arrangements for shipment as required by Conn.Gen.Stat. § 42a–2–504(a) (Uniform Commercial Code § 2–504(a)). They have no significance in determining whether a contract is a shipment or des-

tination contract.[5] But even if the "ship to" addresses had significance they would be inadequate to upset the Uniform Commercial Code's presumption in favor of "shipment" contracts, particularly in view of the fact that defendant does not dispute that the equipment was properly shipped F.O.B. Norwalk, Connecticut.[6]

The instant facts are distinguishable from those in Agrashell, Inc. v. Bernard Sirotta Co., supra, at 588–589, to the extent that each party in that case claimed that the shipments were F.O.B. different points and each party presented specific evidence in support of its position: one party offering orders reading F.O.B. New York, the other producing price quotations and a contract specifying F.O.B. Missouri. Thus, while it was necessary for the Court of Appeals to remand that matter for a further hearing in order to settle the dispute, the facts before the Court on the instant motion are sufficient to permit the Court to determine the issue at this time.

In view of the Court's holding that the contracts were made in Connecticut and that risk of loss passed to defendant in this state, thus providing a sufficient basis for the constitutional exercise of jurisdiction over defendant, it is unnecessary to determine if all the contracts were "performed" here in accordance with the second alternative of Conn.Gen.Stat. § 33–411(c) (1).

■ Defendant raises the spectre that if jurisdiction is asserted over it here, the door will be opened to the assertion of jurisdiction in any mail order situation. The simple answer is that the purchaser in the ordinary mail order situation does not request confirmations from the seller, nor will he bear the risk of loss before the goods reach their destination. Certainly in the commercial setting of this case, where plaintiff and defendant are both corporations with extensive dealings over a long period of time, involving here no less than sixteen contracts for the purchase of over $45,000 worth of equipment, some of which never left Connecticut, no injustice will be worked by holding of defendant amenable to suit in this jurisdiction.

Defendant's motion to dismiss for lack of in personam jurisdiction, pursuant to Rule 12(b) (2), Fed.R.Civ.P., is therefore denied.

5. See In re Eastern Supply Co., 1 U.C.C. Rep.Serv. 151 (W.D.Pa.1963), aff'd, 331 F.2d 852 (3 Cir. 1964). The court there held that despite the fact that the purchase order form specified "Ship direct to 30th & Harcum Way, Pitts. Pa.", the contract did not require the seller to deliver the goods to that destination but required only that he deliver the goods to the carrier for shipment. In other words, the contract was a "shipment" rather than a "destination" contract. In fact, in another proceeding in this same matter, Metropolitan Distributors v. Eastern Supply Co., 21 Pa.D. & C.2d 128, 1 U.C.C.Rep.Serv. 154 (C.P.1959), the court, rejecting an argument precisely similar to that of defendant in the instant case, stated: "The words, 'Ship direct to

30th and Harcum Way, Pitts., Pa.' stand alone. They are only a guidepost to enable the shipper to deliver the goods to the point where the buyer could best use them without additional handling."

6. See Official Comment 5 to Uniform Commercial Code § 2–503 which provides:
". . . under this Article the 'shipment' contract is regarded as the normal one and the 'destination' contract as the variant type. The seller is not obligated to deliver at a named destination and bear the concurrent risk of loss until arrival, unless he has specifically agreed so to deliver or the commercial understanding of the terms used by the parties contemplates such delivery."
See also, W. Hawkland, op. cit. supra, at 94.