OPINION OF THE COURT
Bernard Fuchs, J.
Plaintiff’s motion for summary judgment in lieu of complaint (CPLR 3213) is based on a Nebraska judgment obtained by default for goods sold and delivered. Defendant’s objection *306 that the copy of the judgment submitted with the moving papers is not authenticated in accordance with CPLR 4540 is mooted by another copy served in reply. Plaintiff has also shown satisfactorily that Nebraska law permits the certified mail service it relies on. (Neb Rev Stat § 25-505.01.)
A more substantial issue raised by defendant is whether the Nebraska court’s exercise of jurisdiction over defendant was permissible under the Due Process Clause of the Fourteenth Amendment. (US Const, 14th Amend, § 1.) If it was, this court must accord it full faith and credit and grant the motion. (US Const, art IV, § 1; see, Matter of Farmland Dairies v Barber, 65 NY2d 51 [1985].)
Plaintiff is a Nebraska corporation with no place of business in New York. Defendant is a New York corporation with its only place of business in Brooklyn. It has no agent in Nebraska and conducts no business there.
On July 18, 1990, defendant’s purchasing manager telephoned plaintiff from its Brooklyn office and ordered certain articles of glass to be delivered in Philadelphia by August 1, 1990. Plaintiff promised that delivery although the goods were to be custom cut, finished and boxed. Defendant’s written confirmation specified, "must be in store August 1, 1990”. Timely delivery was critical to defendant because its customer was to open a store on that date. The agreed price was to include the cost of delivery.
During a succession of telephone conversations between plaintiff’s sales manager and defendant’s operations manager, plaintiff gave repeated assurances of timely delivery. On July 30, 1990, plaintiff stated its readiness to ship immediately by motor truck freight. Defendant’s operations manager was certain, however, that truck delivery from Omaha to Philadelphia would require 4 to 5 days. He informed plaintiff that air freight was required and, with plaintiff’s consent, dispatched a carrier to collect the merchandise by truck and deliver it air freight. The cost was $5,200 and that is the unpaid amount of plaintiff’s claim and of its judgment.
Plaintiff’s sales manager insists that plaintiff intended to complete delivery to Philadelphia by August 1, 1990 and could have done so because it "contracts its own truck” exclusively for its own goods. But his telephone assurances to defendant on July 30, 1990 that plaintiff would deliver on time were not accepted and he did not resist defendant’s demand to send an air freight carrier for the goods. Plaintiff insists, however, that it did not agree to pay the cost.
*307 The Nebraska State court acted under that State’s "long-arm” statute which permits jurisdiction over a person as to a cause of action arising from his "[transacting any business in this state.” (Neb Rev Stat §25-536 [1] [a].) The question is whether an application of that statute in the present case offends the "traditional [notions] of fair play and substantial justice” embodied in the Fourteenth Amendment’s Due Process Clause. (International Shoe Co. v Washington, 326 US 310, 320 [1945].)
This in turn requires a determination of whether defendant has established "meaningful 'contacts, ties or relations’ ” with the State of Nebraska such that defendant should " 'reasonably anticipate being haled into court there.’ ” (Burger King Corp. v Rudzewicz, 471 US 462, 474.) Defendant could reasonably anticipate that result if it " 'purposefully avail[ed] itself of the privilege of conducting activities within’ ” Nebraska, thereby "invoking the benefits and protections of its laws.” (Burger King Corp. v Rudzewicz, 471 US 462, 475 [1985], supra.)
The sum of defendant’s "contacts, ties or relations” with Nebraska consists of a telephoned purchase order confirmed by an apparently mailed writing for custom prepared goods to be delivered in Philadelphia by plaintiff at plaintiffs risk and expense. The planned completion of this purchase was altered by defendant’s concern that the purpose of the transaction would be defeated by late delivery.
Defendant adopted the remedy of altering the delivery plan by sending an air freight carrier to plaintiffs plant to take delivery there. Nothing in the papers suggests any connection of defendant with the State of Nebraska, existing or planned, other than the transaction in question.
The mere agreement to the sale contract did not, of itself, subject defendant to the Nebraska court’s jurisdiction. (Burger King Corp. v Rudzewicz, 471 US 462, 478, supra; see, Agrashell, Inc. v Sirotta Co., 344 F2d 583 [2d Cir 1965].) If the agreement had been carried out as originally planned, the Nebraska court would clearly have had no power over defendant. (Agrashell, Inc. v Sirotta Co., supra.) Plaintiff would have borne the entire risk of loss of the goods until delivery in Philadelphia and defendant would have been no more than a passive purchaser. (Neb Rev Stat, ch 91, UCC 2-509 [1] [b]; see, Gladding Corp. v Balco-Pedrick Parts Corp., 76 AD2d 1 [4th Dept 1980]; Whittaker Corp. v United Aircraft Corp., 482 F2d 1079 [1st Cir 1973].)
*308 The fact that the goods were to be custom prepared should not tip the scale of fairness or reasonableness toward sustaining jurisdiction and plaintiff cites no authority which would give it that weight. Gladding Corp. v Balco-Pedrick Parts Corp. (supra, at 5) refers to the absence of "specifically manufactured” goods in refusing to recognize a Florida judgment but that reference is no more than obiter dictum. Nor does the Gladding court cite any authority which would accord the consideration any significance. Had defendant sent its agents to assist or participate in the manufacture or preparation of the goods that could well justify the Nebraska court’s jurisdiction. (Whittaker Corp. v United Aircraft Corp., 482 F2d 1079 [1st Cir 1973], supra.)
Plaintiff appears to place its principal reliance on Fashion Two Twenty v Steinberg (339 F Supp 836 [ED NY 1971]). There, the court sustained its jurisdiction over Indiana and Massachusetts corporations under CPLR 302 because defendant corporations had made substantial purchases from plaintiff amounting to some $30,000 plus additional purchases after the motions before the court were instituted; the "relationship” of the parties and "ensuing sales [were] continuing and [would] probably grow in the future” and defendants had sent "their own trucks for pick-ups” (supra, at 841).
The present case, in contrast, involves an isolated sale for a price of $6,250.50 as shown on the purchase order (20 inflationary years after Fashion Two Twenty v Steinberg, supra). The one similarity to the present case is that defendant, as in Steinberg, sent a truck. But this defendant’s truck was not its own. An air freight carrier provided it.
In Agrashell, Inc. v Sirotta Co. (supra, at 588) the third-party defendant, a Missouri corporation, "shipped ten truckloads of * * * walnut shells to Sirotta in New York, over a period of about eighteen months”, allegedly f.o.b. New York in trucks "owned or leased by” it. The latter two allegations were denied by third-party defendant which insisted that the terms were f.o.b. Missouri by common carrier. The court held that the constitutionality of applying New York’s long-arm statute turned "on [whether the third-party defendant] was responsible for the goods and the trucks while they were traveling through New York” and remanded for findings on those issues (at 589),
The court reached a similar conclusion in Electric Regulator Corp. v Sterling Extruder Corp. (280 F Supp 550 [D Conn *309 1968]). There defendant, a New Jersey corporation, placed 16 "[separate orders with plaintiff] for the purchase of over $45,000 worth of [machinery and] equipment” over a five-month period (supra, at 558). Its order forms specified "shipment via best way” to points both in and out of Connecticut where plaintiff was located (supra, at 558).
All shipments were made f.o.b. Norwalk, Connecticut, delivered to carriers located in Connecticut. Defendant had several Connecticut customers and sent at least one sales representative to make calls there. Plaintiff had, at defendant’s request, serviced equipment which defendant had sold to its Connecticut customers.
The court found that the risk of loss of the goods had passed in Connecticut and concluded like the Agrashell court, that this had provided defendant with the benefits and protections of the forum State’s laws. It held this sufficient to sustain its jurisdiction over defendant against constitutional challenge.
The substantial connections between defendants and the forum States in Steinberg, Agrashell, and Electric Regulator (supra) are nowhere to be found in the present case. Defendant Target’s purchase was insubstantial in commercial terms. There was no relationship, past or intended, between the parties. No agent of defendant ever appeared in Nebraska for any purpose. And the truck which picked up the goods was not defendant’s.
Defendant’s change of the delivery plan is the sole element of the present case which argues for the Nebraska court’s jurisdiction. That change resulted in a transfer of the risk of loss in Nebraska (Neb Rev Stat, ch 91, UCC 2-509 [1] [a]) and defendant’s consequent reliance on Nebraska law to protect its goods. It is not irrelevant, however, that the change was a departure from the transaction as planned and resulted from defendant’s judgment that it was compelled by a commercial emergency. It is not for this court to say that defendant should have relied on plaintiff’s assurances of delivery in two days when it knew from experience that motor freight regularly required more time.
There is no doubt, moreover, that plaintiff acquiesced in the change. If plaintiff had truly been so confident of timely delivery it could have insisted on loading its truck and proceeding with the shipment. Plaintiff could also have objected to the change and protected itself by demanding payment on delivery at its door in Omaha. It elected to do neither.
*310 In view of the circumstances under which defendant enjoyed the Nebraska law’s protection of its goods, its acceptance of that protection may properly be viewed as involuntary. Defendant has not, to any significant extent, "purposefully availed itself of acting in the forum State” nor has it "by its act * * * caused consequences there which are substantial enough to make the exercise of jurisdiction reasonable”. (Gladding Corp. v Balco-Pedrick Parts Corp., 76 AD2d 1, 5, supra.)
Plaintiff’s motion for summary judgment is denied.