**The PUBLICATIONS GROUP, INC., Plaintiff,**

v.

**AMERICAN SOCIETY OF HEATING, REFRIGERATING AND AIR–CONDITIONING ENGINEERS, INC., Defendant.**

**Civ. No. B–83–59 (WWE).**

United States District Court, D. Connecticut.

June 30, 1983.

---

Peter A. Penczer, Bridgeport, Conn., for plaintiff.

Robert F. Moriarty, Bridgeport, Conn., for defendant.

## RULING ON MOTION TO DISMISS

EGINTON, District Judge.

The plaintiff, the Publications Group, Inc. ("PGI"), brought this action in the Superior Court of Connecticut by service of a summons and complaint upon the Secretary of State of the State of Connecticut on December 28, 1982. Plaintiff seeks a declaratory judgment concerning the duration of a written agreement. On January 27, 1983, the defendant American Society of Heating, Refrigerating and Air-Conditioning Engineers ("ASHRAE") removed the action to this court on grounds of diversity of

citizenship. ASHRAE now moves to dismiss this action for lack of jurisdiction and insufficiency of service of process. For the reasons stated below, the motion must be denied without prejudice.

## STATEMENT OF FACTS

█ Unlike the usual motion to dismiss, a motion to dismiss for lack of personal jurisdiction is often a test of plaintiff's actual proof, and it is appropriate for the court to consider affidavits submitted by the parties. *Bowman v. Grolsche Bierbrouwerij B.V.*, 474 F.Supp. 725, 728 (D.Conn.1979). The following statement is taken from the affidavits submitted by both parties.

ASHRAE is a not-for-profit corporation organized under the laws of New York devoted to the advancement of the arts and sciences of heating, refrigerating, air-conditioning and ventilating. ASHRAE has its principal place of business in Atlanta, Georgia. Except for a small office in Washington, D.C., ASHRAE's only office and all of its employees are located in Atlanta. ASHRAE has no offices, real or personal property, bank accounts or telephone listings in Connecticut.

On January 5, 1973, ASHRAE and PGI reached an agreement which gave PGI the exclusive right to sell advertising for all ASHRAE publications. PGI is a Connecticut corporation formed originally for the purpose of carrying out the agreement, and since its inception has maintained its only office in Fairfield, Connecticut. PGI maintains that performance of the agreement is a fulltime undertaking, and that such performance occurs within Connecticut.

The agreement itself was made in New York and states that New York law is to apply.

PGI argues that it was the intention of the parties at the time the agreement was executed that it would be performed in Connecticut. As evidence of that intent, PGI points to the incorporation of PGI in Connecticut as a direct result of the agreement, PGI's continued operation here, and the mention of PGI's Connecticut address in the agreement. ASHRAE correctly notes that the agreement does not expressly require performance in Connecticut and argues that the location of PGI was merely happenstance.

According to affidavits submitted by PGI, ASHRAE uses PGI's Connecticut address under the ASHRAE name on mailings made on its behalf by PGI, stores circulation and membership records at PGI's office, continuously confers with PGI in Connecticut and, through agents and employees, visits Connecticut with respect to advertising solicitation and other functions to be performed by PGI in Connecticut pursuant to the agreement. Presumably, ASHRAE also makes payment to PGI in Connecticut in connection with services performed under the agreement. In addition to these activities related to the agreement, PGI maintains that ASHRAE conducts research in Connecticut, solicits members and subscribers to the ASHRAE Journal and other publications in Connecticut, and generally maintains connections in Connecticut which are systematic, continuous and necessary in order to conduct the business of publishing the ASHRAE Journal and to obtain advertising for it.

## CONCLUSIONS OF LAW

A) *There Is No Long-Arm Jurisdiction Here Under Conn.Gen.Stat. § 33–519(b).*

PGI argues first that jurisdiction is appropriate under Conn.Gen.Stat. § 33–519(b) ("Section 519(b)") which provides:

Every foreign corporation which shall conduct affairs in this state in violation of section 33–504 or 33–505 shall be subject to suit in this state upon any cause of action arising out of such affairs.

Sections 33–504 and 33–505 require foreign nonstock corporations such as ASHRAE to obtain a certificate of authority to conduct affairs in this state. However "Connecticut, as a matter of state policy, has recognized the advantage of not imposing qualifications on the right of foreign corporations to conduct some kinds of commercial and financial transactions . . . ." *Southern New England Distributing Corp. v. Berkeley Finance Corp.*, 30 F.R.D. 43, 45

(D.Conn.1962). Thus, section 33–506(b) provides as follows:

> Without excluding other activities which may not constitute conducting affairs in this state, a foreign corporation shall not be considered to be conducting affairs in this state for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities: ... (4) soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts; ... (7) transacting business or conducting affairs in interstate commerce; ....

 The contract provides that no contract of sale of new advertising in ASHRAE publications shall be entered into by PGI and any advertiser unless the advertiser's credit is acceptable to ASHRAE. Thus, PGI is simply soliciting advertisements on behalf of ASHRAE, and ASHRAE comes within the exception of Section 506(b)(4). Similarly, ASHRAE seems to fall within the interstate commerce exception of Section 506(b)(7). Since ASHRAE is therefore not considered to be conducting affairs within the statute, Section 519(b) does not confer long-arm jurisdiction. *See Electric Regulator Corp. v. Sterling Extruder Corp.,* 280 F.Supp. 550, 554–55 (D.Conn.1968) (holding that there was no long-arm jurisdiction under the equivalent provisions applicable to stock corporations, Conn.Gen. Stat. § 33–411(b)).[1]

### B) *There Is Long-Arm Jurisdiction Here Under Conn.Gen.Stat. § 33–519(c).*

 Plaintiff also seeks to proceed under Conn.Gen.Stat. § 33–519(c) ("Section 519(c)")(1) which states:

> Every foreign corporation shall be subject to suit in this state by a resident of this state or a person having a usual place of business in this state, whether or not such foreign corporation is conducting or has conducted affairs in this state on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; ....

Defendant argues that only contracts which clearly and expressly contemplate and require performance by either party in Connecticut are covered by these provisions. As authority, it cites the following portion of Judge Cabranes' decision in *Bross Utilities Service Corp. v. Aboubshait,* 489 F.Supp. 1366, 1372 (D.Conn.1980):

> Bross' claim that the action arises out of a contract made in Connecticut must fail for lack of relevant allegations or proof.... Nor has the plaintiff established that the contracts clearly and expressly contemplated and required performance by either party in Connecticut. *See Bowman v. Grolsche Bierbrouwerij B.V.,* 474 F.Supp. 725, 732 & n. 7 (D.Conn. 1979) (Daly, J.)[2]; *Glendinning Companies, Inc. v. Codesco, Inc., supra,* 3 Conn. L.Trib. No. 40 at 16. From the testimony ... it appears that the joint venture agreement and all other relevant contracts were to be performed in Saudi Arabia; *There is no evidence that the contracts in question were to be performed elsewhere.* At most Bross has shown that it contemplated that it would undertake some preliminary measures in Connecticut, in preparation for its performance in Saudi Arabia.

*Ibid.* (emphasis added).

Judge Cabranes was simply stating that where all the evidence pointed to perform-

---

**1.** The provisions which relate to stock corporations speak of "transacting business," whereas the nonstock corporation provisions speak of "conducting affairs." Other than this difference, the two statutory schemes are identical. The difference merely reflects the fact that nonprofit corporations, which fall within the nonstock category, do not generally "transact business." This difference does not alter the reach of the two sets of provisions, and cases interpreting the stock corporation provisions will be freely cited in this opinion as authority on the interpretation of the nonstock corporation provisions.

**2.** In *Bowman,* Judge Daly noted that the contract explicitly required performance in Connecticut and did not comment on whether jurisdiction was proper where the contract was not so explicit.

ance in Saudi Arabia and the plaintiff failed to allege any contrary provision in the contract, there was no basis for jurisdiction under that section. Thus, the *Bross* opinion does not hold that only contracts which explicitly require performance in Connecticut are covered by Section 411(c)(1) (or, by analogy, Section 519(c)(1)).

In fact, in the *Glendinning* case cited by Judge Cabranes, the contract apparently did not clearly and expressly provide for performance in Connecticut, and yet this was not viewed as a barrier to application of the statute. There, the superior court judge recognized the rule that "the location where the substantial part of the performance is to be rendered determines whether the contract is one to be performed in the forum state," citing *In re Law Research Services, Inc.*, 386 F.Supp. 749, 756 (S.D.N.Y.1974).

██ This rule should apply regardless of whether the contract explicitly requires performance in Connecticut. The most substantial part of the performance of the contract at issue here clearly was rendered in Connecticut by PGI.

In *Glendinning*, Judge Saden went on to state that such performance must be by the defendant, not by the plaintiff. Judge Saden limited the statute in this way so that the defendant would have at least minimum contacts in Connecticut, thereby avoiding due process problems. Such a limitation seems rather drastic, and this court agrees with Judge Timbers' alternative formulation: " . . . the section must be read to authorize the assertion of jurisdiction in every instance where a cause of action arises out of a contract made or to be performed here so long as there are sufficient total contacts to meet constitutional requirements." *Electric Regulator Corp. v. Sterling Extruder Corp.*, 280 F.Supp. 550, 556 (D.Conn.1968). Thus, for example, Judge Daly went beyond Judge Saden's suggested limitation in *Bowman, supra,* to find jurisdiction based on the plaintiff's performance of the contract in Connecticut.

Finally, while it is not yet possible to be definite on this point, ASHRAE would seem to have sufficient contacts with Connecticut to satisfy the due process requirements elucidated in such cases as *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980). PGI, through its affidavits, paints a picture of frequent, substantial and intentional activities by the defendant here in Connecticut and it does not seem unfair at this stage to require ASHRAE to defend this suit.

However, ASHRAE is not barred from challenging these jurisdictional facts at trial, and will be permitted to renew its motion if justified by a record in which the facts have been more fully developed. *See United States v. Montreal Trust Co.,* 358 F.2d 239, 242 (2d Cir.), *cert. denied* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). PGI may wish to consider its choice of forum carefully; this is a close question and the statute of limitations may bar the refiling of this suit in another jurisdiction if ASHRAE's motion is later granted at trial or on appeal.

C) *Service Of Process Was Proper.*

The court does not find anything unconstitutional as to the method used to give notice in this case. As the defendant itself notes, the procedures employed here are nearly identical to those approved in *Winchester Electronics Corp. v. General Products Corp.,* 198 F.Supp. 355, 358 (D.Conn. 1961). There seems to be little reason to reverse that decision, especially since in this case ASHRAE received actual notice.

SO ORDERED.