Alan HAGAR and Acu–Card,
Inc., Plaintiffs,

v.

Serge ZAIDMAN and P.S.C.G.S., Inc.,
d/b/a Sportcard Authentication and
Grading Service, Defendants.

Civ. No. 5–91–382 (WWE).

United States District Court,
D. Connecticut.

Aug. 19, 1992.

Edward N. Lerner, Brown, Paindiris & Zarella, Fairfield, Conn., Eric R. Gaynor, Brown, Paindiris & Zarella, Hartford, Conn., for plaintiffs.

Stefan Underhill, Day, Berry & Howard, Stamford, Conn., David Medina, Thomas J. Byrne, Pullman & Comley, Bayport, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS OR TRANSFER

EGINTON, Senior District Judge.

### FACTS

Defendants Serge Zaidman and Professional Sportcard Grading Service, Inc. ["PSG"], move, pursuant to Fed.R.Civ.P. 12(b)(2), to dismiss the complaint of Plaintiffs Alan Hagar and Acu–Card, Inc. ["ACI"] for lack of personal jurisdiction, and in the alternative move, pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1404(a), to transfer this action to the Central District of California. Motion papers reveal the following facts.

Hagar is a Connecticut resident. ACI is a Connecticut corporation with its principal place of business in Stamford, Connecticut. Zaidman is a California resident. PSG is a California Corporation with its principal place of business in Long Beach, California. In September, 1990 Plaintiffs and PSG entered into an eight-part agreement [the "Agreement"] in which Plaintiffs would sell copyrights and grant licenses to PSG. Zaidman was president of PSG at this time.

The events leading up to the signing of the Agreement, as gleaned from the complaint and the parties' affidavits, may be summarized as follows. In 1990, Hagar

had a controlling interest in ACI, which dealt in the encapsulation of sport trading cards. Hagar and Zaidman first discussed the sale of assets from Hagar and ACI to Zaidman in Long Beach, California in June, 1990. In July, 1990, while Hagar was in California, the parties reached an understanding whereby Zaidman and PSG would purchase the right to use sport card encapsulation technology and equipment from Hagar and ACI, and Hagar would help PSG utilize the equipment and technology in California.

Zaidman subsequently traveled to Connecticut to review the equipment in question and discuss further terms of the contract. The circumstances of this trip are somewhat unclear. Hagar avers this trip occurred in July and lasted for 3 days, while Zaidman claims it was limited to 1 day in September. For the purposes of the instant motion, the court will defer to Hagar's version of events.

On October 13, 1990, Hagar and Zaidman signed the eight part Agreement in California. Subsequently, some payments were made to Hagar and some equipment was delivered by Hagar to PSG in California. In the instant action, Plaintiffs allege Defendants have breached the Agreement and have committed trademark and copyright infringement.

Defendants claim that they lack the contacts with the state of Connecticut necessary to make them subject to the jurisdiction of this court, or in the alternative that this action should be transferred due to improper venue. For the following reasons, Defendants' motion to transfer will be denied and their motion to dismiss will be granted.

## DISCUSSION

■ A trial court has considerable procedural leeway in deciding a pretrial jurisdictional motion. Should the court find the affidavits and supporting memoranda to be sufficient, the court need not conduct an evidentiary hearing. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). Where the personal jurisdictional issue is in dispute, the nature of a plaintiff's obligation varies depending on the procedural posture of the litigation. Prior to discovery, a plaintiff may defeat a jurisdictional challenge by pleading legally sufficient allegations of jurisdiction in good faith. After discovery, a plaintiff must submit an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).

■ An examination of the record in this case indicates that limited discovery has occurred to date. Therefore, the court will require that Plaintiff merely plead in good faith legally sufficient allegations of jurisdiction. The court's jurisdiction over corporate defendant PSG and Zaidman will be discussed in turn.

### Jurisdiction as to PSG

■ Two conditions must be met for a court to assert in personam jurisdiction over a foreign corporation. First, there must be a jurisdictional statute that reaches the conduct of the defendant. *Fuehrer v. Owens–Corning Fiberglas Corp.*, 673 F.Supp. 1150, 1152 (D.Conn.1986). A district court sitting in diversity must look to the forum state to determine jurisdiction. *Arrowsmith v. United Press International*, 320 F.2d 219, 231 (2d Cir.1963) (en banc). The relevant statute is the Connecticut long-arm statute, Conn.Gen.Stat. § 33–411.

■ In addition, the existence of jurisdiction cannot exceed constitutional due process limitations. Such limitations require that a nonresident corporate defendant have "minimum contacts" with the forum state such that it would reasonably anticipate being haled into court there. *Wide–World Volkswagen Corporation v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Maintenance of the suit in the forum state cannot "offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co., v. Washington*, 326 U.S. 310, 316, 66

S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940).

The Connecticut long-arm statute, Conn. Gen.Stat. § 33–411, allows a Connecticut court to assert jurisdiction over a foreign corporation if that corporation transacts business in the state or if the corporation has committed certain acts which have a sufficient nexus to the state. *See* § 33–411(b); § 33–411(c). To the extent relied upon by Plaintiffs, § 33–411 provides:

> (b) Every foreign corporation which transacts business in this state in violation of Section 33–395 or 33–396 shall be subject to suit in this state upon any cause of action arising out of such business.
>
> (c) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state. . . .

Conn.Gen.Stat. § 33–411(b); § 33–411(c)(1) & (2) (1992).

Plaintiffs argue that the following acts of PSG subject it to jurisdiction under § 33–411: it has transacted business in Connecticut under § 33–411(b); it has made a contract in Connecticut under § 33–411(c)(1); and it has solicited business in Connecticut under § 33–411(c)(2). Each argument will be discussed in turn.

### A) *Transacting Business Pursuant to Section 33–411(b)*

 For a corporation to be subjected to this court's jurisdiction under § 33–411(b), it must have transacted business in Connecticut, and the cause of action under which the corporation is being sued must have arisen from that business. *Electric Regulator Corp. v. Sterling Extruder Corp.*, 280 F.Supp. 550, 554 (D.Conn.1968). As noted above, PSG is a California corporation with its principal place of business in California. It has never had an office in Connecticut, nor does it own any property or maintain any financial accounts in Connecticut.

Plaintiffs argue that the three day trip by PSG president Zaidman to Connecticut in July, 1990 constitutes a business transaction for purposes of § 33–411. Plaintiffs cite *Zartolas v. Nisenfeld*, 184 Conn. 471, 474, 440 A.2d 179 (1981), for the proposition that a "single business transaction" may suffice under Conn.Gen.Stat. § 52–59b for assertion of jurisdiction over a person. Plaintiffs maintain that Zaidman's visit to Connecticut was such a single transaction, and that the *Zartolas* holding extends to business transactions by corporations under § 33–411. There are two problems with this argument.

First, the *Zartolas* case concerned the alleged breach of a warranty deed executed in Iowa and involving real property in Connecticut. The Connecticut Supreme Court held that the execution of such a deed was "purposeful Connecticut related activity" and fell within § 52–59b. *Zartolas*, 184 Conn. at 472–73, 475, 440 A.2d 179. The court cannot extend that holding to the instant case, where the most the defendant corporation did was conduct a portion of ongoing contract negotiations in Connecticut. When the subject of an agreement is real property located in Connecticut, it can be safely assumed the parties have purposefully directed their efforts to Connecticut. The court will not assume such purpose also existed for the sale to a California corporation of equipment located in Connecticut.

Second, an examination of the instant case in light of Judge Timbers' oft-cited opinion in *Electric Regulator* shows that § 33–411(b) cannot be employed here. The definition of a business transaction under § 33–411(b) is not interpreted broadly, but

rather limited by its terms to transactions which violate § 33–396, which requires a corporation transacting business in the state to obtain certification. *Electric Regulator,* 280 F.Supp. at 554. Several activities by a corporation in Connecticut, including some solicitation of business, do not mandate that a corporation obtain certification. Judge Timbers' holding in *Electric Regulator* is equally applicable here:

> If a foreign corporation is not transacting business in the state when it repeatedly sends agents into the state to solicit buyers for its products, and is still not transacting business in the state when orders are consistently obtained as long as the corporation reserves the right to accept the orders outside the state, then certainly the defendant did not transact business in Connecticut [in this case].

*Electric Regulator,* 280 F.Supp. at 555. In the instant case, PSG made at most a single solicitation of goods in Connecticut, and any equipment obtained by PSG was received in California. Therefore, the court finds that PSG has not transacted business in Connecticut pursuant to § 33–411(b).

### B) Making a Contract Pursuant to Section 33–411(c)(1)

■ Plaintiffs argue that, because "material terms" of the Agreement were reached during Zaidman's visit to Connecticut, the contract was made in Connecticut pursuant to § 33–411(c)(1). Plaintiffs do not allege that the Agreement was to be performed in Connecticut. Whether or not the material terms of the Agreement were actually reached in Connecticut or California is irrelevant to the court's analysis. It is well-established that "a contract is considered made when and where the last thing is done which is necessary to create an effective agreement." *Electric Regulator,* 280 F.Supp. at 555. Plaintiffs' own submissions demonstrate that the last necessary act of the Agreement was performed in California, when the Agreement and its sub-parts were executed on October 13, 1990. The mere fact that negotiations for the Agreement occurred for three days in Connecticut does not bring it within the ambit of § 33–411(c)(1).

### C) Solicitation of Business Pursuant to Section 33–411(c)(2)

■ A foreign corporation is subject to suit under § 33–411(c)(2) for causes of action that arise from business solicited in Connecticut if the solicitation has been repeated and has led to orders or offers which form the basis for the cause of action. *Whelan Eng'g Co., Inc. v. Tomar Elec., Inc.,* 672 F.Supp. 659, 663 (D.Conn. 1987). While there is no precise test for invoking § 33–411(c)(2), when a foreign corporation places advertisements in a newspaper whose circulation includes Connecticut, that is sufficient to invoke § 33–411(c)(2). *McFaddin v. National Executive Search, Inc.,* 354 F.Supp. 1166, 1169 (D.Conn.1973).

■ Plaintiffs maintain that the placement of some 95 phone and fax transmissions from Zaidman and PSG to Plaintiffs in Connecticut constitutes solicitation of business pursuant to § 33–411(c)(2), and cite this court's decision in *Publications Group, Inc. v. American Soc'y of Heating, Refrigerating and Air–Conditioning Engineers, Inc.,* 566 F.Supp. 316 (D.Conn. 1983), as authority for the proposition that such telecommunications taken in conjunction with the 3 day trip to Connecticut subject PSG to this court's jurisdiction. Plaintiffs' reliance on the *Publications Group* opinion is misplaced. That case dealt with the application of the contract performance language of § 33–411(c)(1), not with solicitation of business, and as such it is of limited help in resolving the solicitation issue. *See Publications Group,* 566 F.Supp. at 319.

In addition, the underlying contract in *Publications Group* called for substantial performance by the plaintiff in Connecticut. *See Publications Group,* 566 F.Supp. at 320. This situation clearly allows for assertion of jurisdiction under § 33–411(c)(1), but in the instant case Plaintiffs do not allege that the Agreement was to be performed in Connecticut by either party, and the court is unwilling to infer such an expectation. *See Bowman v. Grolsche*

*Bierbrouwerij B.V.*, 474 F.Supp. 725, 732 (D.Conn.1979) (holding that where a contract "clearly contemplated and required performance" in Connecticut by the plaintiff alone, § 33–411(c)(1) subjected the defendant to suit).

Plaintiffs offer no support for the proposition that telephone conversations or fax transmissions in connection with contract negotiations constitute solicitation of business pursuant to § 33–411(c)(2). Moreover, Hagar and Zaidman had engaged in discussions regarding the Agreement before Zaidman traveled to Connecticut. Not only is it unclear whether any solicitation by Zaidman in fact occurred, but any such solicitation was in no way "repeated." Whatever the content of the discussions between Zaidman and Hagar in Connecticut, they represent too tenuous a contact to subject PSG to suit under § 33–411(c)(2).

Jurisdiction as to Defendant Zaidman

Plaintiffs seek to assert jurisdiction over Defendant Zaidman through Conn.Gen. Stat. § 52–59b(a). Plaintiffs concede that they rely on essentially the same jurisdictional theories to assert jurisdiction over Zaidman pursuant to § 52–59b(a) as they did to assert jurisdiction over PSG pursuant to § 33–411. The only new ground presented by the assertion of jurisdiction over Zaidman is the argument advanced by Plaintiffs that Zaidman, by using unauthorized patents and copyrights owned by Plaintiffs, has committed a tortious act causing injury within Connecticut. To the extent relied upon by the plaintiffs, § 52–59b(a) provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual ... who in person or through an agent: (1) Transacts any business within the state; or ... (3) commits a tortious act without the state causing injury to person or property within the state ... if he (A) regularly does or solicits business, or engages in any other persistent source of conduct ... in the state.

Conn.Gen.Stat. § 52–59b(a) (1992).

Plaintiffs offer no rationale why this court should consider Zaidman anything but a corporate officer of PSG. Indeed, it is clear from the papers submitted that, throughout the negotiations for the Agreement and the trip to Connecticut, Zaidman was acting as president of PSG.

■ This court's holding in *Bross Utilities Service Corp. v. Aboubshait,* 489 F.Supp. 1366 (D.Conn.1980), *aff'd,* 646 F.2d 559 (2d Cir.1980), is dispositive of whether Zaidman transacted business under § 52–59b(a)(1):

> Nothing in the record indicates that the individual defendants transacted business other than through the corporations which they controlled. Accordingly, the court's conclusion that the plaintiff's claims against the corporate defendants did not arise out of the transaction by them of any business in Connecticut compels a finding that the same claims against the individual defendants similarly do not confer *in personam* jurisdiction on this court under Conn.Gen.Stat. [§ 53–59b(a)(1) ].

*Bross Utilities,* 489 F.Supp. at 1373. Plaintiffs were unable to assert jurisdiction over PSG pursuant to § 33–411(b), and fare no better in asserting jurisdiction over Zaidman pursuant to § 52–59b(a)(1).

■ Plaintiffs likewise fail in their attempt to invoke § 52–59b(a)(3). Assuming Zaidman did commit some tortious act causing pecuniary loss to Plaintiffs in Connecticut, and assuming the "critical event associated with the dispute" took place in Connecticut, *see Bross Utilities,* 489 F.Supp. at 1374–75 (defining the place of injury pursuant to § 52–59b(a)(3) as the "critical event"), the court would still have to find that Zaidman regularly does or solicits business or engages in other persistent conduct in Connecticut. *See* § 52–59b(a)(3)(A). Yet there is no evidence Zaidman has maintained any regular activity in Connecticut, and thus § 52–59b(a)(3) offers no help to Plaintiffs.

Constitutional Limitations

Because Plaintiffs cannot invoke any of the provisions of § 33–411 or § 52–59b to

138

assert jurisdiction over the defendants, the court has no occasion to consider whether such jurisdiction would be constitutionally permissible under the "minimum contacts" test of *International Shoe Co., v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The court notes that, based on the *International Shoe* test as interpreted by subsequent cases, it is highly doubtful that the court could find that defendants' conduct and connections with Connecticut are such that they should reasonably anticipate being haled into court here. *See Wide–World Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

## CONCLUSION

For the reasons set forth above, the court finds that the requirements of Connecticut's "long-arm" statute have not been satisfied. Defendants motion to dismiss is GRANTED. Defendants motion to transfer is DENIED as moot. SO ORDERED.