**GERBER TRADE FINANCE, INC., Plaintiff,**

v.

**DAVIS, SITA & CO., P.A., Defendant.**

**No. 3:00CV578 GLG.**

United States District Court, D. Connecticut.

Jan. 9, 2001.

Jeffrey R. Hellman, Zeisler & Zeisler, P.C., Bridgeport, CT, Charles L. Rosenzweig, Geoffrey S. Pope, Rand, Rosenzweig, Smith, Radley, Gordon & Burnstein, New York, NY, for plaintiff.

Kerry R. Callahan, Shea S. Kinney, Updike, Kelly & Spellacy, P.C., Hartford, CT, John Gerard Stretton, Jennifer L. Groves, Updike, Kelly & Spellacy, P.C., New Haven, CT, Kevin M. Murphy, Carr, Goodson, Warner, Washington, DC, for defendant.

## *Opinion*

GOETTEL, District Judge.

Plaintiff Gerber Trade Finance, Inc. ("Gerber") initiated this accounting malpractice action asserting a negligence claim against Defendant Davis, Sita & Company ("Davis, Sita"). Defendant now moves to dismiss **[Doc. # 6]** based on lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). The Court heard oral argu-

ment on October 4, 2000. For the reasons stated below, the Court DENIES the motion in part and DEFERS ruling in part. In addition, the Court certifies to the Connecticut Supreme Court two questions of law, set forth below, concerning the scope of accountants' liability to non-clients under Connecticut law.

## BACKGROUND

Plaintiff's claim arises out of Defendant's 1997 audit report of the 1997 year-end financial statements of The Gourmet Source, Inc. ("Gourmet"), a company incorporated in Delaware and having its sole place of business in Connecticut. Gourmet, which is not a party in this action, filed a voluntary petition for bankruptcy on February 10, 1999.

Defendant is a professional association organized under the laws of Maryland and having its principal place of business in Maryland. Defendant is not licensed to do business in Connecticut and does not maintain an office or property in the State. Gourmet first retained the Defendant in June of 1997 to perform an audit and to report on its financial condition as of June 1, 1997. On March 31, 1998, Gourmet again retained Defendant to prepare an audit report of its 1997 year-end financial statements. Both agreements were executed in Defendant's Maryland office.

During the preparation of the audit reports, Defendant's vice president visited Gourmet's Connecticut offices on three days, once on or about July 30, 1997 for the first audit, and on April 1 and 2, 1998 for the second audit, in order to obtain information and to review Gourmet's files. Defendant claims that it performed the remainder and majority of the work required to prepare the audit report in its Maryland office.

Plaintiff is a trade finance company, based in New York and authorized to do business in Connecticut, which financed Gourmet's inventory purchases. Claiming to be one of Gourmet's principal secured creditors, Plaintiff alleges that it relied on the 1997 year-end audit report in its decision to make additional extensions of credit to Gourmet. Plaintiff claims losses of $682,500 due to misleading and false information in the 1997 year-end financial statements. Specifically, Plaintiff alleges that the financial statements overstated Gourmet's accounts receivable by more than $200,000 and stated that Gourmet had paid a liability of $167,500, when in fact it was in default. Plaintiff claims that Defendant was negligent in that it should have detected the errors in the financial statements, and that it knew or should have known that Plaintiff, as Gourmet's primary secured lender, would rely on the accuracy of the financial statements to its detriment.

## DISCUSSION

Defendant moves to dismiss based on lack of personal jurisdiction pursuant to Rule 12(b)(2) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). We shall consider the jurisdictional issue first.

### I. *Rule 12(b)(2) claim—Lack of Personal Jurisdiction*

Because the parties have not yet engaged in jurisdictional discovery and the Court, exercising its discretion, has not held an evidentiary hearing, the Plaintiff is required only to make a *prima facie* showing that personal jurisdiction exists. *See A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79 (2d Cir.1993). We decide the issue of personal jurisdiction based on the parties' pleadings, affidavits, and supporting materials, construed in the light most favorable to the plaintiff and with all doubts resolved in the plaintiff's favor. *See Marine Midland Bank N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981); *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). The Court must accept as true the facts alleged in the complaint to the extent they are uncontroverted by the defendant's affidavits. Where the plaintiff's complaint and the defendant's

affidavits conflict, the Court may provisionally accept disputed factual allegations as true. *Credit Lyonnais Sec. USA, Inc. v. Alcantara,* 183 F.3d 151, 153 (2d Cir. 1999). At this preliminary stage of the proceedings, Plaintiff's *prima facie* burden may be met solely by good faith allegations in the pleadings. *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566–67 (2d Cir.1996). Eventually, however, Plaintiff must prove the jurisdictional facts by a preponderance of the evidence at either an evidentiary hearing or trial. *Credit Lyonnais,* 183 F.3d at 154; *Marine Midland,* 664 F.2d at 904.

■ In cases invoking diversity jurisdiction, a court applies the law of the forum in which it sits in order to determine whether it may exercise personal jurisdiction over a defendant. *CutCo Indus.,* 806 F.2d at 365 (citing *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963)). Under Connecticut law, in determining whether a court has personal jurisdiction over a foreign corporation, the court must first determine whether the state's long-arm statute is satisfied; if so, the court must then decide whether that exercise of jurisdiction would offend the due process clause of the Fourteenth Amendment. *Bensmiller v. E.I. Dupont de Nemours & Co.,* 47 F.3d 79, 81 (2d Cir.1995).

## A. Connecticut's Corporation Long Arm Statute

Connecticut's long arm statute authorizing service of process on foreign corporations provides in pertinent part: "Every

foreign corporation which transacts business in this state in violation of section 33–920, as amended by section 29 of this act, shall be subject to suit in this state upon any cause of action arising out of such business." Conn.Gen.Stat. § 33–929(e).[1] This provision thus authorizes personal jurisdiction over a foreign corporation if two conditions are met: (1) the corporation has transacted business within the state without having obtained a certificate of authority to do so from the Secretary of State, as required by section 33–920 of the General Statutes of Connecticut;[2] and (2) the cause of action arises out of that business activity.

### 1. Transacting Business

The term "transacting business" is not defined in the long-arm statute or in any relevant case law. Indeed, the term is so broad as to defy precise definition. A court must consider the particular facts of each case when determining whether a foreign corporation is transacting business in Connecticut. *Eljam Mason Supply, Inc. v. Donnelly Brick Co.,* 152 Conn. 483, 485, 208 A.2d 544 (1965).

■ The term "transacting business" within the meaning of section 33–929(e) is not interpreted broadly, but rather is "limited by its terms to transactions which violate [the statute requiring a certificate of authority to do business within the State]." *Hagar v. Zaidman,* 797 F.Supp. 132, 135–36 (D.Conn.1992). The term is further limited, in the context of this subsection of the corporation long-arm statute, by certain statutory exclusions which

1. Section 33–929(f), which applies to suits brought by "a resident of this state or by a person having a usual place of business in this state," is inapplicable in this case. Plaintiff concedes that it does not fulfill that threshold requirement and thus may not invoke that provision of the long-arm statute.

2. Section 33–920, as amended by section 29 of the Connecticut Business Corporation Act, provides in pertinent part:
 (a) A foreign corporation, other than an insurance, surety or indemnity company,

may not transact business in this state until it obtains a certificate of authority from the Secretary of the State.... (b) The following activities, among others, do not constitute transacting business within the meaning of subsection (a) of this section: ... (10) conducting an isolated transaction that is completed within thirty days and that is not one in the course of repeated transactions of a like nature....
Conn.Gen.Stat. § 33–920.

provide that certain activities do not constitute transacting business and therefore do not necessitate a certificate of authority. *See* Conn.Gen.Stat. § 33–920(b). The excluded activities are generally those which are merely incidental to a corporation's main business purpose, such as maintaining bank accounts, soliciting orders, maintaining or defending lawsuits, and holding board meetings, to name a few. *Id.* Transactions in interstate commerce are also excluded, as are isolated transactions completed within thirty days. *See id.* § 33–920(b)(10)–(11); *see also Hagar*, 797 F.Supp. at 136 (holding that the defendant had not transacted business because its purchase of equipment from a Connecticut resident fell within the interstate commerce exclusion); *Electric Regulator Corp. v. Sterling Extruder Corp.*, 280 F.Supp. 550, 554 (D.Conn.1968) (same). The list of excluded activities is not exhaustive, however, and courts have declined to strain the term "transacting business" to include activities merely incidental to the main business purpose of the corporation. *See, e.g., Electric Regulator*, 280 F.Supp. at 555 n. 4 (gathering cases); *see also Surveyors, Inc. v. Berger Bros. Co.*, 9 Conn.Supp. 175 (Conn.Super.Ct.1941). Even so limited, though, the long-arm statute is a "far-reaching" one. *Eutectic Corp. v. Curtis Noll Corp.*, 342 F.Supp. 761, 762 (D.Conn.1972).

▉ Plaintiff argues that personal jurisdiction is proper under section 33–929(e) because Defendant's visits to Connecticut to obtain information and examine Gourmet's files constituted the transaction of business in the state, *viz.*, the practice of public accountancy, without the requisite certificate of authority. Defendant counters that it did not transact business in the state and therefore was not required to obtain a certificate of authority. Without discussing its physical presence in the state for two days (for the second audit, the basis of this dispute) to review Gourmet's files and obtain the information necessary to perform the audit, Defendant asserts that the majority of the audit was performed in its office in Maryland. Defendant also argues that it need not obtain a license to perform certified public accountancy in the State of Connecticut because it does not provide accounting services within the state.

The issue we must determine, therefore, is whether the Defendant's activity conducted within the state, allegedly the provision of accounting and auditing services, is the type of activity that would require the defendant to obtain a certificate of authority from the Secretary of State pursuant to section 33–920. We first note that none of the exclusions from the meaning of "transacting business," listed in section 33–920(b), apply in this case. Section 33–920(b)(10), which excludes "conducting an isolated transaction that is completed within thirty days and is not one in the course of repeated transactions of a like nature," comes closest to fitting the facts of this case. However, because the audit in question was the second "transaction of a like nature" that Defendant had performed for Gourmet, we cannot exclude Defendant's conduct from the meaning of "transacting business" on that basis.

The list of excluded activities is, however, not exhaustive. Defendant apparently invites this Court to articulate a new exception for accountants, arguing that the Connecticut legislature has no authority over out-of-state accountants visiting Connecticut clients. Defendant submits that requiring accountants and attorneys who render professional services to multi-state (and multi-national) corporations to register in multiple jurisdictions would be "inconsistent with the realities of every day life." Perhaps, but we need not decide so broad an issue to resolve this motion. Defendant was surely aware, when it agreed to perform the second audit of Gourmet's financial condition, that Gourmet's sole place of business was in Connecticut. Because Defendant chose to direct its activities purposefully toward a resident of this forum, it should have been aware of the

potential effect its conduct might have here.

Furthermore, Defendant should have been aware of Connecticut's statutes and regulations requiring out-of-state certified public accountants visiting the State of Connecticut to obtain temporary permits before practicing public accountancy in the State. Under Connecticut law, a certified public accountant from another state may temporarily practice in this state on professional business "incident to his regular practice." However, the visiting CPA "shall annually obtain a limited permit from the board in accordance with section 20–280–9." Conn. Agencies Regs. § 20–281–11. Section 20–280–9 provides that the State Board of Accountancy may, in its discretion, issue a limited permit to a person who holds a certificate as a certified public accountant of another state. These statutory and regulatory provisions clearly require out-of-state accountants wishing to practice public accountancy within the state of Connecticut to obtain temporary permits.

Defendant argues that it was not "practicing public accountancy" during its visits to Connecticut but was merely gathering the necessary information in order to perform the audit in its Maryland offices. Plaintiff, on the other hand, argues that the inspection and review of a client's records and files is not merely preliminary to the performance of an audit, but rather, is an integral part of the audit process itself, and therefore, Defendant's visits to Connecticut constituted the practice of public accountancy. We need not decide this issue at this juncture. Construing the allegations in the light most favorable to Plaintiff, as we must for the purposes of this motion, we find that Defendant's provision of accounting and auditing services to Gourmet was not merely incidental to its main business purpose and therefore should not be excluded from the meaning of "transacting business" within the context of section 33–920. We therefore find that Plaintiff has alleged sufficient juris-

dictional facts to show that Defendant's conduct constituted the transaction of business within the meaning of the long-arm statute.

### 2. Cause of Action Arising Out of Business Activity

The second prong of the long-arm statute requires that the cause of action arise out of the transaction of business in the state without a certificate of authority. *See Thomason v. Chemical Bank,* 234 Conn. 281, 661 A.2d 595 (1995). The parties do not dispute that Plaintiff's cause of action arises out of Defendant's audit of Gourmet's 1997 year-end financial statements. Thus, we find that Plaintiff has made an adequate showing to sustain its *prima facie* burden of establishing that Defendant's conduct satisfies section 33–929(e) of Connecticut's long-arm statute.

### B. Constitutional Due Process

■ Having determined that the relevant long-arm statute provides statutory authority to the Court in its exercise of personal jurisdiction over the Defendant, we must ensure that such exercise would not offend the Defendant's constitutional right to due process under the Fourteenth Amendment. It is well settled that "[a] state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The contacts must be such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 325 U.S. 310, 326, 65 S.Ct. 1579 (1945).

■ A court may assert specific jurisdiction over a nonresident defendant if the defendant has "purposefully directed his activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzew-*

*icz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotation marks and citations omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 475, 105 S.Ct. 2174 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Physical presence in the forum state, however, is not required. *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174.

Plaintiff argues that the Court's exercise of personal jurisdiction over the Defendant would not offend constitutional due process because the performance of the audit was Connecticut-directed activity and, further, that Defendant purposefully availed itself of the privilege of conducting activities within Connecticut by practicing public accountancy in the State. Defendant argues that the Court lacks personal jurisdiction over it because it has insufficient contacts with Connecticut to satisfy the long-arm statute.

We have no difficulty finding that Defendant had sufficient contacts with the state such that it could anticipate being haled into court here. Defendant must have been aware that Gourmet's sole place of business was in Connecticut when it agreed to audit Gourmet's financial statements for the second time and allegedly performed at least some of the auditing work in Gourmet's Connecticut office, such that it should reasonably have anticipated the substantial effect its conduct might have in the state. *See, e.g., Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 258 (11th Cir.1996) (upholding Florida district court's exercise of personal jurisdiction over Michigan accountants and attorneys); *T.M. Hylwa, M.D., Inc. v. Palka,* 823 F.2d 310, 314 (9th Cir.1987) (upholding California district court's exercise of personal jurisdiction over Kansas accountant); *Baker & Kerr, Inc. v. Brennan,* 26 F.Supp.2d 767, 769 (D.Md.1998) (exercising personal jurisdiction over Pennsylvania accountant); *Clark v. Milam,* 847 F.Supp. 409, 414 (S.D.W.Va.1994) (exercising personal jurisdiction over non-resident accountants). Defendant, having purposefully availed itself of the privilege of conducting business within Connecticut, should have reasonably anticipated being haled into court here.

We next consider whether our assertion of personal jurisdiction would offend traditional notions of fundamental fairness and substantial justice. Factors to be considered include the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174. Although we recognize the burden placed on Defendant in defending this action in Connecticut, we balance that consideration against the State's significant interest in adjudicating a dispute involving services provided by unlicensed out-of-state accountants to a Connecticut resident. Moreover, as Plaintiff points out, several witnesses (Gourmet's officers or former employees) and certain documentary evidence (Gourmet's books and records) necessary for this litigation are located in Connecticut. Balancing all these factors, we find that the exercise of personal jurisdiction over the Defendant does not offend traditional notions of fundamental fairness and substantial justice.

Therefore, we find that the Plaintiff has made a *prima facie* showing that the Court may exercise personal jurisdiction over the Defendant, subject to satisfactory proof at trial that Defendant's activities constituted the transaction of business in the state. Defendant's motion to dismiss based on Rule 12(b)(2) is DENIED.

## II. *Rule 12(b)(6) claim—Accountants' Third-Party Liability*

Defendant contends that Plaintiff fails to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), because no contractual privity existed between Defendant and Plaintiff, precluding liability based on the audit report. "Dismissal under [Rule 12(b)(6) ] is inappropriate unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *SIPC v. BDO Seidman,* 222 F.3d 63, 68 (2d Cir.2000) (citations and internal quotation marks omitted).

Defendant argues that under Connecticut law, an accountant owes a duty of care to a non-client (or third party) only if the accountant and the non-client are in contractual privity or have a "relationship sufficiently intimate to be equated with privity." *Credit Alliance Corp. v. Arthur Andersen & Co.,* 65 N.Y.2d 536, 543, 493 N.Y.S.2d 435, 483 N.E.2d 110, 112 (N.Y. 1985).

Plaintiff maintains that the complaint states a claim for negligence because Defendant should have known that Plaintiff, as Gourmet's principal creditor and secured party, was the intended or foreseeable beneficiary of the audit report. According to Plaintiff, Defendant owed it a duty of care which arose from the foreseeability of the harm that was likely to result from negligent preparation of the second audit report. In support of this allegation, Plaintiff alleges that Defendant should have known that Plaintiff would rely on the audit report in making further credit extensions to Gourmet, because Defendant's audit procedures, which required it to review "significant commitments or contingencies," should have alerted it to Plaintiff's June 1, 1997 Facility Agreement with Gourmet, which called for Gourmet's financial statements to be reviewed by independent certified public accountants at the close of each fiscal year.

Plaintiff further alleges that it specifically requested that Defendant include a note to the 1997 year-end financial statements, reading, in part: "Included in the total [of accounts payable] is $387,049 due to Gerber Trade Finance Company. Gerber's account is secured by the Company's merchandise inventory under the terms of a security agreement." Plaintiff claims that Defendant had initially omitted this reference to Plaintiff's security agreement from the draft audited financial statement, but later included the note after Plaintiff's executive vice-president, Jeffery Koslowsky, contacted Gourmet's president to insist that the reference be added. Plaintiff argues that Defendant's inclusion of the requested reference in the final notes to the audited financial statements reflects Defendant's knowledge that Plaintiff would rely on the audit report in making decisions about credit extensions to Gourmet,[3] supporting the inference that Defendant was aware that the specific purpose of the audit was to satisfy Plaintiff as Gourmet's principal lender.

Defendant replies that the mere insertion of a note into a lengthy audit report does not amount to knowledge that the Plaintiff would rely on the report, or to the creation of a relationship sufficiently intimate to be equated with privity.

---

**3.** In support of its arguments, Plaintiff has submitted an affidavit of its executive vice president with several documents attached as exhibits, including the credit facility agreement between Plaintiff and Gourmet, Defendant's auditing procedures, the financial statements in question, and an excerpt from a deposition of Defendant's president taken in Maryland in a proceeding against Defendant by Gourmet's other secured creditor. However, if the Court considers these extra-complaint documents, this motion to dismiss must be converted into a motion for summary judgment. "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Fed.R.Civ.P. 12(c). We therefore exclude consideration of the affidavit and rely exclusively on the pleadings in deciding this motion.

 "The essential elements of a cause of action in negligence are well-established: duty; breach of that duty; causation; and actual injury." *RK Constructors, Inc. v. Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). "The existence of a duty of care is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." *Petriello v. Kalman*, 215 Conn. 377, 382–83, 576 A.2d 474 (1990). "If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." *RK Constructors*, 231 Conn. at 384–85, 650 A.2d 153.

 Under Connecticut law, "a duty of care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." *Burns v. Board of Educ.*, 228 Conn. 640, 646, 638 A.2d 1 (1994) (citations omitted). Foreseeability, however, "is not commensurate with duty, and proof of foreseeability does not establish the existence of a duty of care." *Waters v. Autuori*, 236 Conn. 820, 828, 676 A.2d 357 (1996).

Other jurisdictions that have considered the issue have applied a variety of legal standards ranging on a continuum from most to least restrictive. These legal standards may be categorized broadly as: (1) privity (requiring a direct connection or contractual relationship between two parties); (2) near privity (the minority view, following the rule set forth in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931), clarified in *Credit Alliance v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985),[4] and affirmed in *Security Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*, 79 N.Y.2d 695, 586 N.Y.S.2d 87, 597 N.E.2d 1080 (1992)); (3) the standard set forth in section 552 of the Restatement (Second) of Torts,[5] considered the majority view; and (4) the reasonable foreseeability rule. *See* Carl Pacini & David Sinason, *Gaining a New Balance in Accountants' Liability to Nonclients for Negligence: Recent Developments and Emerging Trends*, 103 Com.L.J. 15, 21 (1998); *see also Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007, 1010–14 (La.1993) (discussing third-party liability for negligent misrepresentation).

---

4. The *Credit Alliance* court articulated a tripartite test requiring that "(1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance." 65 N.Y.2d at 550, 493 N.Y.S.2d 435, 483 N.E.2d at 117.

5. Section 552 of the Restatement (Second) of Torts, entitled "Information Negligently Supplied for the Guidance of Others," provides:
 (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
 (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
 (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Although the Connecticut Supreme Court has applied the principles of section 552 of the Restatement (Second) of Torts in a negligent misrepresentation claim not involving accountants' third-party liability, *see Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 575–76, 657 A.2d 212, 220–21 (1995) (also citing *Ultramares*), no Connecticut appellate decision to date has addressed the contours of accountants' liability to non-clients under Connecticut law. Of the four lower courts examining the issue, two adopted and applied the *Ultramares/Credit Alliance* "near privity" standard. *See Twin Mfg. Co. v. Blum, Shapiro & Co.*, 42 Conn.Supp. 119, 602 A.2d 1079 (Conn.Super.Ct.1991); *Rogovan v. Coopers & Lybrand*, 1992 WL 77182, 1992 Conn.Super. LEXIS 921, (Conn.Super. Apr.3, 1992). The other two lower courts adopted and applied section 552 of the Restatement (Second) of Torts. *See Dudrow v. Ernst & Young, LLP*, 1998 WL 800204, at *11 (Conn.Super. Nov.4, 1998); *Shawmut Bank Conn., N.A. v. Deloitte & Touche*, 1995 WL 283917, 1995 Conn.Super. LEXIS 1383 (Conn.Super.Ct. Apr.25, 1995).

Plaintiff argues that the Connecticut Supreme Court adopted the foreseeability standard in *Mozzochi v. Beck*, 204 Conn. 490, 529 A.2d 171 (1987), a case involving a third party claim of legal malpractice. Plaintiff relies on *Mozzochi* for the proposition that "courts generally now permit actions for professional malpractice without reference to privity, so long as the plaintiff is the intended or foreseeable beneficiary of the professional's undertaking...." *Id.* at 499, 529 A.2d 171. We do not read that case as so holding. Rather, that proposition appears to be merely what the plaintiff in that case was contending. Although the *Mozzochi* court noted the

possibility that "under some circumstances, a third party might be able to recover for the legal malpractice of an attorney," it concluded that the plaintiff did not state a claim because no duty of care arose "in the absence of a specific relationship that would make it reasonable for the defendants to foresee the plaintiff's reliance on their conduct...." *Id.* at 500, 529 A.2d 171. We are disinclined to stretch the dicta in *Mozzochi* to fit the circumstances of this case.

Because no Connecticut appellate decision, constitutional provision, or statute has yet articulated the appropriate standard to be applied in the pending matter, and because "resolution of these issues requires a delicate balancing of state policy concerns," *SIPC v. BDO Seidman*, 222 F.3d 63, 76 (2d Cir.2000), we certify the following questions of law to the Connecticut Supreme Court:[6]

1. Does an accountant owe a duty of care to a non-client who relied to his detriment upon a negligently prepared financial report, where no special relationship existed between the parties but where the damages incurred by the non-client were reasonably foreseeable by the accountant?

2. Does an accountant owe a duty of care to a non-client who relied to his detriment upon a negligently prepared financial report, where the accountant was aware that the financial report was being prepared for the non-client's use and upon which the non-client was intended to rely, and where some conduct on the part of the accountant links it to the non-client and evinces its understanding of the non-client's reliance on the financial report?

**6.** Connecticut's recently enacted "Uniform Certification of Questions of Law Act" provides in relevant part:
 The Supreme Court may answer a question of law certified to it by a court of the United States ... if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state. 1999 Conn.Legis.Serv.P.A. 99–107 (S.7049), § 4 (West). *See also* Conn.R.App.Proc. § 82–1.

Of course, the Connecticut Supreme Court has the discretion to reformulate the certified questions as it sees fit. This Court welcomes any guidance the Connecticut Supreme Court may care to provide as to the state law issues presented in this case.

## CONCLUSION

For the reasons given above, the Court DENIES Defendant's motion to dismiss [Doc. # 6] in part and DEFERS ruling in part. The Court certifies two questions of law, set forth above, to the Connecticut Supreme Court.

The Clerk of Court is directed to transmit a copy of this Order, under the official Seal of this Court, to the Clerk of the Connecticut Supreme Court, together with the complete record in this case.

SO ORDERED.